THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES A. WHITAMORE, Defendant-Appellant.

Fourth District   No. 4—92—0387

Opinion filed February 25, 1993.

Michael W. Atkins, of Springfield, for appellant.

Brett Irving, State's Attorney, of Pittsfield (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In June 1991, the State charged defendant, James Whitamore, with one count of keeping a place of gambling and 14 counts of gambling, in violation of sections 28—3 and 28—1(a)(3) of the Criminal Code of 1961 (Criminal Code) (Ill. Rev. Stat. 1991, ch. 38, pars. 28—3, 28—1(a)(3)). At defendant's jury trial in February 1992, the trial court directed a verdict of acquittal on six of the gambling counts, and the jury found defendant guilty of all remaining counts. In April 1992, the trial court (1) sentenced defendant to pay a total fine of $900 (a $100 fine on each count), and (2) ordered certain property seized from Whitamore's Supper Club (hereafter Whitamore's) subject to forfeiture. Defendant appeals his convictions and the forfeiture order, arguing that (1) the charging instrument insufficiently set forth the nature or elements of the offenses charged, (2) he was denied effective assist-

ance of counsel, and (3) the trial court improperly ordered forfeiture of defendant's property.

We affirm.

## I. BACKGROUND

On April 19, 1991, around noon, the Pike County sheriff's department executed a search warrant on Whitamore's, which is owned and operated by defendant. During the search, the officers seized the following:

(1) eight coin-operated, electronic video casino-type machines (blackjack, poker, and keno) located in an area of Whitamore's accessible to the public;

(2) six similar casino machines located in a storage room not accessible to the public; a coin-counting machine located in the storage room;

(3) several boxes of unused, empty quarter (roll) wrappers located nearby the coin-counting machine;

(4) several garbage cans containing many empty, used quarter wrappers located in a public area; and

(5) over $2,500 in United States currency and quarters ($1,258 in quarters), including $306.50 in quarters found in the eight casino machines located in a public area, a bucket of quarters found near the coin-counting machine, rolls of quarters found near the coin-counting machine, rolls of quarters found by a cash register in the public area, rolls of quarters found in a filing cabinet in the office, and quarters found in two cash registers in a public area.

Thereafter, the State charged defendant with one count of keeping a place of gambling and 14 counts of gambling—one count for each casino machine seized from Whitamore's.

At defendant's trial in February 1992, two undercover officers testified that in April 1991, they entered Whitamore's and obtained $60 worth of quarters from a barmaid, in addition to $20 in quarters they brought in themselves. They observed that at least 12 electronic casino machines were in the bar area of Whitamore's. They both played the casino machines by inserting quarters. For each quarter entered into a machine, they would receive one credit. When they "won" a game on the machine, they would earn credits, with the number of credits won based upon the number of credits they entered ("bet") before playing that game. One credit was the minimum amount that could be entered before playing a game; no maximum amount was determined. The officers played approximately five of the machines. Eventually, they each picked a particular machine to play

and played their machines until each showed 80 credits. Separately, they each then went to the barmaid, told her that they had 80 credits left on their individual machines, and each received a $20 bill from her. They then left Whitamore's.

An officer involved in the execution of the search warrant on Whitamore's testified regarding the property seized from Whitamore's and the location of these items, as described above. The State then called two employees of Whitamore's, Barbara Treaster and Patricia Hamm, who were working there when the search warrant was executed. They both refused to answer questions and pleaded the protections of the fifth amendment. (U.S. Const., amend. V.) Subsequently, after the State granted them immunity, they answered questions, but they both were hostile witnesses. Treaster testified that she had emptied quarters from the machines on a daily basis. She stated that she would "refund" 80 credits when a player requested a refund so the player could move to another machine. However, she would not give a refund for less than 80 credits, and she could not remember if she ever refunded more than 80 credits. She would usually give rolls of quarters to the player asking for a refund, but sometimes refunds would be paid with currency. Hamm's testimony essentially corroborated Treaster's testimony.

Pike County Sheriff Michael Lord testified that he interviewed Treaster and Hamm during the execution of the search warrant at Whitamore's. Treaster told him that during her three to four years of employment, she had made payoffs on the casino machines. She told him that defendant had set the policy of requiring at least 80 credits before making a payoff. Hamm told Lord that she had made a $200 payoff. She also said that defendant had recently directed her to remove several casino machines to the storage room because he had received a tip that the police might raid Whitamore's.

Lord also testified that he spoke with defendant a few days after seizing the property from Whitamore's when defendant came to Lord's office to talk with him. Defendant admitted that he and his staff made payoffs to customers, but he explained that after a customer obtained a minimum number of credits, a customer could receive a payoff in order to play a different machine. Defendant told him that the minimum payoff levels were 40 credits on the poker machines and 80 credits on the other machines. Defendant also told Lord that he had made a payoff of $80 to $100.

Defendant's trial counsel offered no evidence in defense, but instead presented a motion for a directed verdict in defendant's favor on all charges. The trial court found sufficient evidence to support the

count alleging that defendant kept a place of gambling and the eight gambling counts based upon the eight casino machines seized in the public area of Whitamore's. However, the court did grant defendant's motion regarding the six gambling counts based upon the six casino machines found in the areas of Whitamore's not accessible to the public. As stated earlier, the jury found defendant guilty on the remaining nine counts.

At the sentencing hearing, the court sentenced defendant to pay a $100 fine for each of his nine convictions. At the forfeiture hearing that immediately followed, the court found that the 14 casino machines and all the quarters ($1,258) seized from Whitamore's subject to forfeiture because they were all integrally related to gambling.

## II. ANALYSIS

### A. *Sufficiency of the Charges*

On appeal, the defendant argues for the first time that counts II through IX of the information charging him with gambling were insufficient because they did not describe the nature or the elements of the offense charged. He contends that because the casino machines were not inherently illegal, the State needed to plead additional facts regarding their alleged illegal use as gambling devices. We disagree.

Section 28—1(a) of the Criminal Code describes the offense of gambling, in pertinent part, as follows:

"A person commits gambling when he:
* * *
(3) Operates, keeps, owns, uses, purchases, exhibits *** any gambling device." (Ill. Rev. Stat. 1991, ch. 38, par. 28—1(a)(3).)

A gambling device is described in section 28—2(a) of the Criminal Code as follows:

"A 'gambling device' is any *** slot machine or other machines or device for the reception of money or other thing of value on chance or skill or upon the action of which money or other thing of value is staked, hazarded, bet, won or lost ***. A 'gambling device' does not include:

(1) A coin-in-the-slot operated mechanical device played for amusement which rewards the player with the right to replay such mechanical device ***." Ill. Rev. Stat. 1991, ch. 38, par. 28—2(a)(1).

The information filed in June 1991, charged defendant as follows:

"That on or about the 19th day of April 1991, in Pike County, Illinois, [defendant] committed the offense of Gambling

## COUNT 2

In that the said defendant knowingly kept a gambling device, a 'Super Black Jack machine' bearing serial #11176.

\* \* \*

[This] count in violation of Illinois Revised Statutes Chapter 38, Section 28—1(a)(3), CLASS A MISDEMEANOR[.]"

The remaining counts III through XV read exactly the same except each listed a different, specific casino machine.

When a defendant does not challenge the sufficiency of a charge until appeal, the standard of review is whether the information " 'apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct.' " (*People v. Hughes* (1992), 229 Ill. App. 3d 469, 472, 592 N.E.2d 668, 669, quoting *People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440; see also *People v. Heffron* (1992), 239 Ill. App. 3d 932, 936.) Under this standard, the defendant must show that the defect in the charging instrument actually prejudiced him in preparing his defense. *People v. Thingvold* (1991), 145 Ill. 2d 441, 448, 584 N.E.2d 89, 91.

■■ In the present case, the charging information set forth defendant's name, the name of the offense, the approximate date of the offense, the county in which the offense occurred, that defendant "knowingly kept" gambling devices, and listed the names of the machines alleged to be gambling devices. Each casino machine was specifically listed in a separate count. Thus, defendant could—and did— present a defense regarding each count charging gambling by use of each separate machine. In fact, in defendant's motion for directed verdict, defendant's counsel distinguished the six machines located in the storage room from the other eight machines, and the trial court as a result granted his motion for a directed verdict regarding the six counts related to those machines.

The casino machines were listed with enough specificity to bar future prosecutions of gambling based thereon. Thus, contrary to defendant's argument that merely having an arcade game in the future could subject him to future prosecutions arising out of the same conduct, only other machines not listed in the information could be used for future prosecutions of gambling during the time period indicated in the information. Therefore, based upon our review of the information charging defendant with the eight counts of gambling, we conclude that defendant has not come close to demonstrating that any alleged defects in the charge prejudiced him in any way in preparing his defense.

## B. *Ineffective Assistance of Counsel*

Defendant next argues that he was denied effective assistance of counsel because his attorney failed (1) to attack the information that charged him with gambling and keeping a place of gambling, (2) to present a meaningful theory of defense, including not presenting any evidence, and (3) to effectively cross-examine the State's witnesses. Defendant argues that his trial counsel entirely failed to subject the State's case to a "meaningful adversarial testing" and effectively deprived him of presenting a defense, denying him his sixth amendment right to assistance of counsel, as explained in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

To establish ineffective assistance of counsel under *Strickland*, defendant must prove that (1) his counsel's performance was so seriously deficient that it fell below an objective standard of reasonableness, *and* (2) this deficient performance so prejudiced the defense that defendant was denied a fair trial with a reliable result. (See *People v. Johnson* (1993), 154 Ill. 2d 356, 369; *People v. Odle* (1992), 151 Ill. 2d 168, 172, 601 N.E.2d 732, 734.) We reject defendant's claim and find that the conduct of defendant's trial counsel comes nowhere near meeting either prong of the *Strickland* test.

A reviewing court will not review trial counsel's conduct that involves an exercise of judgment, discretion, strategy, or trial tactics. (*People v. Jones* (1992), 234 Ill. App. 3d 1082, 1098, 601 N.E.2d 1080, 1090; *People v. Williams* (1992), 235 Ill. App. 3d 638, 651, 601 N.E.2d 1070, 1079.) Furthermore, a strong presumption exists that trial counsel's performance falls within the wide range of reasonable professional assistance. Accordingly, a reviewing court must give substantial deference to counsel's conduct. *People v. Breton* (1992), 237 Ill. App. 3d 355, 366, 603 N.E.2d 1290, 1298.

Defense counsel's failure to attack the sufficiency of the charge against defendant could not possibly have affected the outcome of this case. We have already held that defendant suffered no prejudice as a result of the allegedly deficient charges. Furthermore, had defendant filed a successful pretrial motion challenging the charges, the trial court would merely have ordered the State to provide some additional information. However, the absence of that additional information did not affect defendant's right to a fair trial.

Also, a trial counsel's decision regarding the extent of cross-examination, whether to present witnesses, and what defense theory to assert all constitute matters of trial strategy. (*People v. Ramey* (1992), 152 Ill. 2d 41, 54, 604 N.E.2d 275, 281.) Here, defense counsel vigor-

ously argued defendant's case, provided a rational theory for his defense—that the use of the inherently legal casino machines was lawful and did not constitute gambling—and vigorously cross-examined the State's witnesses. In addition, while a defendant ultimately decides himself whether to testify on his behalf (*Ramey*, 152 Ill. 2d at 54, 604 N.E.2d at 281), here defendant does not contend that his counsel refused to allow him to testify or even that he desired to do so; instead, he now argues that his testimony was critical to the presentation of his defense. Because defendant's argument merely attacks his trial counsel's strategy and theory of defense, it fails to demonstrate ineffective assistance of counsel.

Defendant deserves competent, not perfect, representation (*Odle*, 151 Ill. 2d at 173, 601 N.E.2d at 735), and counsel's performance must be evaluated from counsel's perspective at the time of counsel's representation (*People v. Blommaert* (1992), 237 Ill. App. 3d 811, 814, 604 N.E.2d 1054, 1056). Defendant's hindsighted review of his trial counsel's performance and strategies merely speculates that some other trial counsel might have done things differently and better. Such speculation cannot support a finding of ineffective assistance of counsel under *Strickland*.

Furthermore, defendant has not demonstrated how his trial counsel's performance denied him a fair trial with a reliable result. The evidence strongly supported the jury's findings. Even if defendant had offered testimony from patrons who used the casino machines lawfully or had more extensively cross-examined the State's witnesses, that action would not have detracted from the State's evidence of the unlawful use of these machines at other times. Also, the possibility that his trial counsel could have argued another theory of his defense does not detract from the fairness or reliability of the trial he received. Therefore, we find that defendant's argument also fails under the second prong of *Strickland*.

## C. *Forfeiture of the Seized Property*

Defendant also argues that the trial court erred in ordering forfeiture. Section 28—5 of the Criminal Code, which governs seizure and forfeiture of gambling devices and gambling funds, states, in pertinent part, the following:

"(a) Every device *** used unlawfully for gambling shall be considered a 'gambling device', and shall be subject to seizure ***. As used in this Section, a 'gambling device' includes any slot machine, and includes any machine or device constructed for the reception of money or other thing of value and so con-

structed as to return, or to cause someone to return, on chance to the player thereof money, property or a right to receive money or property. \*\*\*

(b) Every gambling device shall be seized and forfeited to the county wherein such seizure occurs. Any money or other thing of value integrally related to acts of gambling shall be seized and forfeited \*\*\*.

(c) If, within 60 days after any seizure pursuant to subparagraph (b) of this [s]ection, a person having any property interest in the seized property is charged with an offense, the court which renders judgment upon such charge shall, within 30 days after such judgment, conduct a forfeiture hearing \*\*\*." Ill. Rev. Stat. 1991, ch. 38, pars. 28—5(a), (b), (c).

Defendant first argues that his forfeiture hearing was not held within 30 days after judgment against him on the gambling charges, as required by section 28—5(c) of the Criminal Code. Defendant contends that as a result, the trial court could not order forfeiture. Defendant asserts that the forfeiture hearing, held immediately following his sentencing hearing on April 15, 1992, was held outside the 30-day period of section 28—5(c) of the Criminal Code because it was held over 30 days after the jury returned its guilty verdicts on February 19, 1992, and over 30 days after the trial court entered judgment on the jury's findings on March 9, 1992. We disagree.

After receiving the jury's verdict on February 19, 1991, the trial court set April 3, 1992, for sentencing and hearing any post-trial motions, including forfeiture petitions the State might file regarding the property seized from Whitamore's. On March 9, the court filed a purported order of judgment, finding defendant guilty on the nine counts and acquitting him on the other six counts. The State filed a forfeiture petition on March 20, but the hearing thereon, as well as the sentencing hearing, was continued at defendant's request until April 15.

■ Section 102—14 of the Code of Criminal Procedure of 1963 (Procedural Code) defines "judgment" as follows:

" 'Judgment' means an adjudication by the court that the defendant is guilty or not guilty *and if the adjudication is that the defendant is guilty it includes the sentence pronounced by the court.*" (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 102—14.)

Thus, a trial court does not enter a "judgment" until it has imposed a defendant's sentence. (*People v. Fitzgerald* (1988), 171 Ill. App. 3d 218, 225, 524 N.E.2d 1190, 1194; *People v. Lashmett* (1984), 126 Ill. App. 3d 340, 345-46, 467 N.E.2d 356, 361.) The forfeiture hearing

held immediately following the sentencing hearing thus met the 30-day requirement of section 28—5(c) of the Criminal Code. Whatever the trial court may have intended to accomplish by purporting on March 9, 1992, to enter a judgment against defendant on the jury's guilty verdicts prior to the sentencing hearing does not matter here because the "judgment" of which section 28—5(c) of the Criminal Code speaks is the "judgment" that section 102—14 of the Procedural Code defines.

Defendant next argues that the six casino machines referred to in the six counts directed out by the trial court and the quarters not found in casino machines ($951.50) were not subject to forfeiture. Regarding the six casino machines, he contends that because the police found them in a storage room not accessible to the public, they cannot qualify as gambling devices under section 28—5(a) of the Criminal Code. Regarding the quarters, he contends that only the $306.50 in quarters found in the eight casino machines located in public areas was subject to forfeiture because the remainder of quarters was commingled with other proceeds. Defendant asserts that the commingled quarters cannot be declared as an integral part of gambling as required under section 28—5(b) of the Criminal Code. We disagree with both contentions.

Forfeiture proceedings are civil in nature, requiring the State to prove by only a preponderance of the evidence that the item in question should be forfeited. (*People v. Ziomek* (1989), 179 Ill. App. 3d 303, 306, 534 N.E.2d 538, 539; Ill. Rev. Stat. 1991, ch. 38, par. 28—5(c).) Because a trial court, as trier of fact, determines whether the State has met its burden of proof based upon the court's assessment of the believability of the evidence, a reviewing court will reverse the trial court's determination only if it is against the manifest weight of the evidence. *People v. LeShoure* (1986), 143 Ill. App. 3d 839, 844, 493 N.E.2d 687, 690; *People ex rel. Broch v. Hogg* (1991), 213 Ill. App. 3d 188, 195-96, 571 N.E.2d 888, 893.

■ Defendant argues that none of the 14 machines seized, including the six machines in the storage room, were gambling devices. However, while the casino machines may have not been inherently illegal, the jury's verdict finding defendant guilty on eight gambling charges required a specific finding that the eight machines in public areas were gambling devices. (See Ill. Rev. Stat. 1991, ch. 38, pars. 28—1(a)(3), 28—2(a); Illinois Pattern Jury Instructions, Criminal, Nos. 20.01, 20.02, 20.05 (2d ed. 1981) (given at defendant's trial).) Furthermore, that the trial court directed verdicts on the six counts regarding the six machines found in the storage room means nothing more

than the court concluded that the State had failed to prove beyond a reasonable doubt that these machines were used for gambling. However, a lower burden of proof applies to forfeiture hearings, and here the State presented sufficient evidence to meet that lower burden.

At the forfeiture hearing, the trial court ruled that the six casino machines found in the storage room also met the definition of a gambling device under section 28—5(a) of the Criminal Code and thus were subject to forfeiture. The State presented evidence at trial that, if believed by the court, supports this determination. An employee at Whitamore's told Lord that defendant had ordered the machines removed from public areas because he had received a tip that the police might raid Whitamore's. The undercover officers testified that at least 12 machines were in public areas. They also explained how the wagering and payoff process worked involving an unspecified number of machines. No evidence was presented that the six machines in question did not work or were used in a manner different from the other eight machines found in public areas. Thus, we conclude that the trial court's determination that these six machines also constituted gambling devices under section 28—5(a) of the Criminal Code was not against the manifest weight of the evidence.

The trial court also stated at the forfeiture hearing that "any items of money that would have a rational relation to [any of the casino] machines would be subject to forfeiture as being an integral part of a gambling transaction." The court then found that all of the seized quarters, but no other monies, were also subject to forfeiture. We agree with the trial court's use of the rational relationship standard when it reviewed whether the money seized at Whitamore's was "integrally related to acts of gambling" under section 28—5(b) of the Criminal Code (Ill. Rev. Stat. 1991, ch. 38, par. 28—5(b)). (See *People v. Massey* (1991), 219 Ill. App. 3d 909, 916, 579 N.E.2d 1259, 1264 (trial court must find that an item which is not contraband *per se*—not inherently illegal—had a rational relationship to an unlawful purpose before that item is subject to forfeiture); *Ziomek*, 179 Ill. App. 3d at 307, 534 N.E.2d at 540.) The State presented evidence regarding the use of quarters in defendant's gambling enterprise, including where defendant kept the quarters, how patrons used the quarters, and how employees gathered, counted, and rolled the quarters. We find the court's determination that *all* of the quarters should be forfeited was not against the manifest weight of the evidence.

Defendant nonetheless argues that all the quarters, except for the $306.50 of quarters found in the eight casino machines in the public area, were commingled with Whitamore's bar and Illinois State Lot-

tery receipts, and thus cannot be forfeited because they are not separately identifiable as gambling proceeds. Although some money received for legitimate business purposes was intermingled with money, including quarters, used in the gambling business, we will not allow a defendant to shield himself from forfeiture by commingling his gambling proceeds with his legitimate business proceeds. The rational relationship standard still applies to the commingled funds. Based upon this record, the trial court's determination that all the seized quarters were subject to forfeiture was not manifestly erroneous.

### III. CONCLUSION

For the reasons stated, we affirm defendant's convictions and the trial court's forfeiture order.

Affirmed.

KNECHT and COOK, JJ., concur.