THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ISMALDO NAVARRETE, Defendant-Appellant.

First District (5th Division)   No. 1—91—2299

Opinion filed February 4, 1994.

40

James A. McCarron, of Chicago (Marian H. Donohue, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Christine Cook, and Dori K. Leo, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Ismaldo Navarrete was indicted for the offenses of unlawful use

of a weapon (720 ILCS 5/24—1 (West 1992)), unlawful firearm possession (430 ILCS 65/2 (West (1992)), and failure to exhibit a city firearm registration certificate (Chicago Municipal Code § 11.1—13 (1983)). After a jury trial by the circuit court of Cook County, defendant was convicted of the offenses and sentenced to 180 days in jail. A timely notice of appeal was filed.

Defendant requests that his conviction be reversed or, in the alternative, that this cause be reversed and remanded for a new trial or for resentencing. Defendant makes four arguments: (1) the evidence was insufficient to sustain a conviction; (2) the trial court's instructions to the jury regarding the elements of the offense charged were improper; (3) prosecutorial comments regarding the failure of a witness to testify denied defendant a fair trial; and (4) the trial court imposed an excessive sentence.

At trial the State presented the two arresting officers as witnesses. Officer Barry Miller, a police officer for the Chicago police department, testified that on the evening of October 20, 1990, around 9:15 p.m., he and his partner, Daniel Kometz, were working in plain clothes and an unmarked police car. As the officers turned from 18th Street onto Allport Street, they saw an altercation between two men on the sidewalk. At trial Miller identified defendant as one of those men. He testified that the men were yelling and that "there was some physical contact between two of them." Miller testified that in his case report he used the phrase "argument with another subject" to describe the altercation. Kometz pulled the squad car next to the two men. As Miller started to get out of the car, he saw defendant look at him and then start to run into a tavern at 1802 S. Allport. Both Miller and Kometz pursued defendant into the tavern. Kometz' testimony added that the other unidentified man ran into the tavern with defendant. Inside the tavern Miller saw defendant by a jukebox. Defendant had a handgun in his right hand. Miller testified that defendant reached down behind the jukebox, put the gun down, stood up, turned his back to Miller and Kometz and faced the rear of the tavern.

On cross-examination Miller stated that when he reached the tavern door he stopped before entering. Miller lost sight of the defendant for "just a second or two." However, Kometz testified that Miller ran directly in without stopping. Miller's case report stated that the gun was "discarded" onto the floor. That report did not mention any jukebox. Miller testified that after defendant walked away from the jukebox, Miller retrieved the loaded gun, noted it was cocked, and handed it to Kometz while Miller held defendant with his other hand. Kometz' testimony corroborated that he saw Miller recover a gun

from behind the jukebox, which Kometz then uncocked and unloaded. Officer Kometz searched and handcuffed defendant and read him his *Miranda* rights. Defendant's testimony at trial was that as he was being handcuffed he asked, "[I]s that gun mine?" Upon arrival of an assist car, the two officers took defendant to the police station where defendant was unable to produce a firearm owner's certificate or a city registration form. At trial Miller could not recall defendant's home address but remembered that it was different from the address of the tavern and that defendant was unemployed.

On cross-examination Miller stated that the number of monthly arrests were tallied. He stated that whether an officer would be questioned regarding the lack of arrests in a month depended upon what an officer was working on. Miller stated that he did not see the gun prior to entering the tavern.

On redirect examination Miller explained that by "argument" in his case report he meant to refer to a very animated physical argument with pushing, touching, and yelling. He further stated that in addition to the case report, a supplemental arrest report was also prepared that same night. That report noted that the "subject threw a loaded and cocked *** pistol behind the jukebox."

On cross-examination Kometz stated that pushing and yelling on a sidewalk constitute disorderly conduct. However, the unidentified man was not arrested or charged with any crime.

At the close of the State's case, defendant moved for a directed verdict on the grounds that neither officer saw a gun in defendant's possession while he was on the sidewalk and that Officer Miller lost sight of him upon entering the tavern. The motion was denied.

Defendant presented two witnesses and also testified on his own behalf. Javier Jaime testified that he was a friend of defendant's and had known him for about 10 years. He testified that he and defendant had been drinking in the tavern on that evening when defendant went outside at around 9 p.m. for two or three minutes. When he returned, defendant resumed standing by Jaime and picked up his drink, which he had left on the bar. Approximately one minute later, Jaime testified, a police officer came up and started searching defendant. Jaime testified that he never saw a gun in defendant's possession. Jaime stated that he would not lie for defendant because of friendship.

A second witness for defendant, Victor Velasquaz, testified that defendant and Jaime were standing at the front edge of the bar by the door when he arrived around 8 or 8:15 p.m. He never saw defendant or anyone else leave the tavern. He turned when he heard the tavern door open and saw two plainclothes officers walk in. He saw

them search defendant and a few other people. Velasquaz never saw a gun nor did he see the officers recover a gun from behind the jukebox. Velasquaz had known defendant for about 20 years.

Defendant testified that while inside the tavern he saw a friend and the friend's girl friend going down the street. He went outside to invite them into the bar. The friend was happy and was telling defendant how he had just played in a basketball game. The three went inside the tavern, but the friend could not find a place to sit near defendant so the friend and his girl friend sat farther down the bar. Defendant testified that less than a minute later the police officers entered and searched defendant and his friend's girl friend before continuing to search others. Defendant testified that the officers moved the jukebox and continued searching before returning to the jukebox, where they pulled out a pistol. Defendant admits that as he was handcuffed, he asked whether the gun was his. Yet defendant also testified that prior to his arrest when they showed him the gun he had not seen the gun before.

On cross-examination, defendant said that the friend he saw on the street was named Abron and that he was a good friend. When asked if his friend was present to testify, defendant responded "No." Defendant stated that he did not run into the tavern; rather, he walked in. He stated that he did not see the police pull up. However, he did see them pull a gun out from behind the jukebox.

Following the presentation of evidence, a conference was held concerning jury instructions. Defendant's proffered jury instruction regarding believability, based on a substantial deviation between the police reports and the officers' testimony, was denied. During the State's closing argument, the assistant State's Attorney informed the jury that defendant's friend, who was on the sidewalk with him, failed to appear and testify for him during trial. No objection was made.

After the jury returned with a guilty verdict on all three charges a sentencing hearing was held. The trial court refused defendant's request for a presentence investigation and a later hearing date. The court relied on the State's city background on defendant. Subsequently, the State offered the following factors in aggravation: (1) in May 1975, defendant was arrested on an unlawful use of weapons charge and either pled or was found guilty and received a one-year conditional discharge, and he also pled guilty or was found guilty of firing a gun within city limits and was assessed a $50 fine; (2) defendant was placed under supervision in 1979 on an unlawful use of weapons, failure to register and bond forfeiture warrant—the State did not know the results of this gun arrest; (3) January 1981 arrest

with a gun—no subsequent information; (4) April 1986 charge of battery, unlawful use of weapons, no firearm owner's identification card, and no city registration, to which charges there was either a plea or finding of guilty with defendant receiving one year's probation; and (5) another arrest for battery with no further information. The State then informed the court that "this is defendant's *** fifth gun arrest" and his third gun conviction.

Defendant requested probation, which was denied by the court. The trial court explicitly stated it was not relying on defendant's arrest record, but rather on the three separate, prior gun convictions. The State clarified that defendant had only two prior convictions, after which the court sentenced defendant to a 180-day jail term.

According to defendant's brief defendant filed a timely post-trial motion for a new trial and/or arrest of judgment. On July 1, 1991, the motion was denied, and this appeal was filed on that day.

■ Defendant contends that the evidence was insufficient to sustain a conviction because the State failed to prove beyond a reasonable doubt that defendant was not on his land or in his own abode or fixed place of business. The State's position is that it had no burden to prove that defendant was not on his land, in his own abode or in his fixed place of business, and even if it did, it satisfied that burden.

Conviction for unlawful use of weapon based on a statute precluding possession of a revolver other than on defendant's own land or abode or fixed place of business requires proof that defendant was not on his own land or in his fixed place of business. (*People v. Anderson* (1983), 117 Ill. App. 3d 806, 454 N.E.2d 34.) The remaining question is whether the State satisfied its burden. The general rule is that a conviction will be sustained where, viewed in the light most favorable to the prosecution, the record evidence is such that a rational trier of fact could have found defendant guilty beyond a reasonable doubt. (*People v. Holmes* (1990), 141 Ill. 2d 204, 565 N.E.2d 950.) Officer Miller testified that his investigation revealed that defendant's address was not 1802 South Allport Street, thus establishing that defendant was not in his own abode. Miller's investigation also revealed that defendant was unemployed, precluding any possibility that defendant was at his fixed place of business. Therefore the prosecution met its burden.

Defendant also contends that the State failed to prove beyond a reasonable doubt that he possessed a firearm on a public street or other public lands. Officer Miller testified that he saw defendant put the gun behind the jukebox in the tavern. Defendant testified that when he was being handcuffed, having been shown the gun which had been recovered from behind the jukebox, "I asked him [the police

officer], I said is that gun mine?" The jury could reasonably believe that defendant possessed the gun while on the street and before he entered the tavern. (*People v. Nunez* (1974), 24 Ill. App. 3d 163, 320 N.E.2d 462.) We find that a rational trier of fact could have considered the above circumstantial evidence and found defendant guilty beyond a reasonable doubt.

■ Defendant next contests the propriety of the jury instructions. He maintains that essential elements of the crime were omitted, thus depriving him of a fair trial. Defendant has waived review of this matter by failing to object to the instructions at the time they were given and by failing to raise the issue in his post-trial motion. (*People v. Easley* (1992), 148 Ill. 2d 281, 592 N.E.2d 1036.) However, we shall consider the error pursuant to our authority under this court's Rule 451(c). 134 Ill. 2d R. 451(c).

The trial court "bears the burden of seeing that the jury is instructed on the elements of the crime charged." (*People v. Parks* (1976), 65 Ill. 2d 132, 137, 357 N.E.2d 487, 489.) While failure to instruct the jury on the elements of the crime charged is error, we are mindful that an error committed while instructing the jury does not justify reversal where the evidence is so clear and convincing that the outcome of the trial would not have been different had the jury been properly instructed. (*People v. Griffin* (1993), 247 Ill. App. 3d 1, 616 N.E.2d 1242; see *People v. Jeter* (1993), 247 Ill. App. 3d 120, 616 N.E.2d 1256 (where failure to instruct the jury that specific intent was an essential element of the crime charged (attempted murder) amounted to harmless error).) While the instructions read to the jury in this case should have indicated to the jury that conviction for unlawful use of a weapon requires proof that defendant was not on his own land or in his fixed place of business, the lack of such an instruction under the facts of this case is harmless error.

■ Defendant's third argument is that prosecutorial comments regarding the failure of a witness to testify denied defendant a fair trial. Defendant complains of two occasions where the prosecution called attention to the absent witness. The State cross-examined defendant concerning his testimony that he went outside the bar to invite a male friend and his girl friend into the bar. Defendant cites the following exchange:

"Q. You did go out in front of the tavern, is that right?
A. Yes.
Q. And you did have a conversation with someone out in front of the tavern, is that right?
A. Yes.
Q. What was that person's name.

A. Abron.

Q. He's a good friend of yours?

A. Yes.

Q. He's not here to testify today, though?

A. No, no."

The second occasion where the prosecution called attention to the absent witness occurred during its closing argument:

"So I believe the witnesses were honest but there was someone else who was there that night who wasn't here today, that's the man that Mr. Navarrete was in the fight with, that Mr. Navarrete told you today that was a good friend. They were talking, they were happy; they were going inside to celebrate. He's not here to tell you that."

Defendant concedes that he failed to object to either of these comments at trial but would have this court review the propriety of these prosecutorial comments under the doctrine of plain error. We are not persuaded that any error so affected substantial rights as to rise to the level of plain error. Even if the alleged error had not been waived, improper prosecutorial remarks generally do not warrant reversal unless they are so prejudicial as to constitute such a material factor in the conviction that, absent the remarks, the jury likely would have reached a contrary verdict. (*People v. Reeves* (1992), 228 Ill. App. 3d 788, 593 N.E.2d 683.) Defendant does not argue that absent the remarks the jury likely would have reached a contrary verdict. Rather, he maintains only that "a contrary verdict may have resulted." That is not the test. Illinois case law states that "the State cannot properly comment on a defendant's failure to call a nonalibi witness when the comment implies that the witness would have testified unfavorably to the defendant and when that witness is equally accessible to both parties." (*People v. Alexander* (1989), 184 Ill. App. 3d 855, 863-64, 540 N.E.2d 949, 954, citing *People v. Lasley* (1987), 158 Ill. App. 3d 614, 632, 511 N.E.2d 611.) A witness is not considered equally available, however, if the witness would likely be biased against the State. (*Alexander*, 184 Ill. App. 3d at 864, citing *People v. Wilson* (1986), 149 Ill. App. 3d 293, 300, 500 N.E.2d 128, 133.) Apparently defendant's theory is that the State improperly implied that defendant failed to call Abron for fear his testimony would be unfavorable to his side when the State also failed to call Abron quite possibly for the same reason.

According to defendant the absent witness, Abron, was a good friend. Any bias that existed on the part of a good friend of the defendant would likely be against the State. The cases that have found a likelihood of bias against the State have been cases where the

absent witness was defendant's wife, brother, stepchild or fiancee. While it is not clear that this list is exhaustive, no case law states that being a good friend of defendant constitutes a likelihood of bias against the State. We need not determine whether good friend should be added to the list of those to be considered biased against the State since any error was harmless and defendant was not prejudiced. We conclude that the prosecutorial remarks complained of do not rise to the level of plain error.

■ Finally, defendant argues that the trial court imposed an excessive sentence. Well-settled case law supports the State's contention that the trial court is the proper forum for determining a sentence, and therefore its sentencing decisions are entitled to great weight and deference. (*People v. James* (1987), 118 Ill. 2d 214, 514 N.E.2d 998.) We cannot say that the term imposed represents an abuse of discretion, especially in light of defendant's prior record of weapon violation offenses.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

MURRAY, P.J., and COUSINS, J., concur.