THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DERRICK L. LINDSEY, Defendant-Appellant.

Fourth District    No. 4—99—0014

Opinion filed August 3, 2001.

COOK, J., specially concurring in part and dissenting in part.

Daniel D. Yuhas and Catherine K. Hart, both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and David A. Hibben, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

In August 1998, police arrested defendant and the State charged him with unlawful possession of weapons by a felon (720 ILCS 5/24—1.1(a) (West 1998)) and unlawful use of weapons (720 ILCS 5/24—1(a)(4) (West 1996)). In November 1998, a jury convicted defendant of both charges. In December 1998, the trial court sentenced defendant to concurrent 10- and 3-year prison terms. Defendant appeals, arguing (1) ineffective assistance of counsel due to counsel's failure to stipulate to defendant's prior felony convictions and failure to file a motion to vacate his conviction for unlawful use of weapons; and (2) violation of his fourteenth amendment due process right (U.S. Const., amend.

XIV) to a fair trial occurred when the State argued defendant could be found guilty on an accountability theory as the evidence did not support such theory. We affirm as modified and remand with directions.

## I. BACKGROUND

On November 4, 1998, a jury convicted defendant, Derrick Lindsey, of unlawful possession of weapons by a felon and unlawful use of weapons. On August 4, 1998, Officers David Griffet and Jim Rein, both of the Champaign police department, were driving an unmarked police car when they noticed a car stopped in the road. A pedestrian, later identified as Johnnie Washington, was leaning into the driver's side window and acted nervously when he recognized the unmarked police car. The driver of the vehicle, defendant, exited the car and got into the backseat and Washington got into the driver's seat and proceeded to pull the car over to the curb. The officers pulled behind the car and Washington got out of the car and approached the officers.

Officer Griffet asked for Washington's driver's license and, when he could not produce a license, Washington gave Griffet a false name. As Washington talked to Griffet, defendant and another passenger, Gary McFarland, remained in the vehicle. After discovering Washington's true identity, Griffet arrested Washington for driving without a valid license. When Washington was arrested, defendant and McFarland exited the car, and when Griffet placed Washington in the squad car, defendant and McFarland walked away from the car. Officer Rein then went to defendant's car to look for the keys, which he previously noted were on the front seat, but one of the passengers had taken them. Rein then performed a search of the vehicle, incident to Washington's arrest.

Rein tried to open the glove compartment, but it was locked. He then pried it open enough to observe a handgun inside. At this point, he used a screwdriver he found in the car to break open the glove compartment, revealing two more handguns. One of the guns was a 9 millimeter, holstered with an empty magazine inserted. The second gun was a .25-caliber semi-automatic handgun. Also in the glove compartment were six .25-caliber bullets and an empty magazine. The third gun was a .25-caliber handgun, fully loaded with a round in the chamber. The search of the trunk revealed the following items: an unloaded 9 millimeter magazine wrapped in a black and white handkerchief and a bank book in defendant's name.

After the search, Rein looked for defendant and McFarland, but they had left the scene. Rein saw McFarland walking down an alley and he followed him and placed him under arrest. Defendant was found and arrested the following day.

During the trial, the court took judicial notice of defendant's three prior felonies and informed the jury he had been convicted of aggravated battery and obstructing justice. Defense counsel objected to the introduction of evidence of defendant's prior convictions, but the objection was overruled because defendant's prior felonies were an element of the unlawful possession of weapons by a felon charge.

The defense presented the stipulated testimony of a forensic scientist who found four latent fingerprints on one of the handguns. Those prints belonged to Gary McFarland and no latent prints were found on the other weapons. During closing arguments, the State presented two theories to the jury. First, the State argued defendant was guilty of the charged offenses because he was in constructive possession of the handguns found inside the car, which was under his control. Second, the State argued because one of the weapons was connected to Gary McFarland through the fingerprint evidence, defendant was guilty of the charged offenses because he was legally responsible for McFarland's actions: "defendant, I'd argue to you, is guilty, if nothing else, because he's responsible for the action of McFarland[,] who clearly was in possession of one of those guns."

The jury returned guilty verdicts on both counts. On December 7, 1998, the trial court denied defendant's posttrial motion and sentenced him to concurrent terms of 10 years and 3 years, respectively, for unlawful possession of weapons by a felon and unlawful use of weapons. On December 17, the trial court denied defendant's motion to reconsider sentence, and this appeal followed.

## II. ANALYSIS

Defendant presents two issues for review: (1) he was denied his sixth amendment right to the effective assistance of counsel when defense counsel (a) failed to offer to stipulate to defendant's felony status and (b) failed to file a motion to vacate his conviction for unlawful use of weapons; and (2) his fourteenth amendment due process right to a fair trial was violated by the State's improper use of an accountability theory.

### A. Sixth Amendment Right to Effective Assistance of Counsel

#### 1. *Failure To Stipulate*

Defendant first contends counsel's failure to stipulate to his felony status was error outside the range of professionally competent assistance and, as a result, the proceedings below were unreliable and prejudicial to him. We disagree.

●1 The sixth amendment guarantees a criminal defendant the ef-

fective assistance of counsel. U.S. Const., amend. VI. To prove counsel rendered ineffective assistance, a defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The foundation of the two-pronged test is whether counsel's performance so undermined the adversarial process as to cause the result to be unreliable, possibly unjust, and violative of defendant's sixth amendment right to counsel. *People v. Whitamore*, 241 Ill. App. 3d 519, 525, 608 N.E.2d 1304, 1309 (1993). Under the first prong, defendant must establish counsel's performance fell below an objective standard of reasonableness. Under the second prong, defendant must show counsel's deficient performance resulted in actual prejudice and, but for counsel's errors, the outcome of the proceedings would have been different. *Whitamore*, 241 Ill. App. 3d at 525, 608 N.E.2d at 1309.

•2 Several principles guide our analysis and application of the *Strickland* standard. "[A] strong presumption exists that trial counsel's performance falls within the wide range of reasonable professional assistance" and, therefore, substantial deference is given to counsel's performance. *Whitamore*, 241 Ill. App. 3d at 525, 608 N.E.2d at 1309. A reviewing court will not review counsel's performance when it involves judgment, strategy, or trial tactics. *Whitamore*, 241 Ill. App. 3d at 525, 608 N.E.2d at 1309. "Defendant's hindsighted review of his trial counsel's performance and strategies merely speculates that some other trial counsel might have done things differently and better. Such speculation cannot support a finding of ineffective assistance of counsel under *Strickland*." *Whitamore*, 241 Ill. App. 3d at 526, 608 N.E.2d at 1310. Finally, a defendant is entitled to competent, but not perfect, counsel. *People v. Odle*, 151 Ill. 2d 168, 173, 601 N.E.2d 732, 735 (1992).

Illinois case law provides no insight on whether counsel's failure to stipulate to defendant's prior felony convictions, when those prior convictions must be proved as an element of the charged offense, results in ineffective assistance. Defendant presents a case in which the United States Supreme Court held a trial court abuses its discretion when it refuses a defendant's offer to stipulate to the fact of a prior conviction without disclosing the nature of the prior conviction, when the purpose of the evidence is solely to prove the element of the defendant's status as a felon. *Old Chief v. United States*, 519 U.S. 172, 191-92, 136 L. Ed. 2d 574, 594-95, 117 S. Ct. 644, 655-56 (1997).

The federal statute involved in *Old Chief* made it unlawful for a person convicted of an offense punishable by imprisonment for more than one year to have possession of a firearm. *Old Chief*, 519 U.S. at 174-75, 136 L. Ed. 2d at 584, 117 S. Ct. at 647. The Supreme Court

looked to Federal Rule of Evidence 403 (see 28 U.S.C. app. Fed. R. Evid. 403 (1994)) and determined that, where felony status is an element of the offense, disclosing the nature of the offense can be more prejudicial than probative, and defendant's offer to stipulate should be allowed by the trial court.

Defendant points out the statute involved in the present case, unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1 (West 1998)), is similar to the federal statute in *Old Chief*. Illinois has also adopted a common-law version of Federal Rule of Evidence 403 in case law. See *People v. Lewis*, 165 Ill. 2d 305, 329, 651 N.E.2d 72, 83 (1995). Defendant recognizes, however, *Old Chief* involves a factual situation, unlike the present case, where a defendant proffered and the trial court *refused to accept* his stipulation to his felony status. Nevertheless, defendant urges us to apply the Supreme Court's reasoning and analysis to the present case: "If a trial court abuses its discretion, due to the prejudice to the accused, when it refuses to stipulate to the fact of a prior conviction, surely it is error for a defendant's attorney not to offer to so stipulate."

While the Supreme Court's analysis and reasoning might be appropriate under the specific facts in *Old Chief*, we cannot apply the same standard here. The Supreme Court reviewed the *trial court's* action under an abuse of discretion standard. This case involves an ineffective assistance of counsel challenge and we review the effectiveness of defense counsel's representation under the standard set forth in *Strickland*. Given these differences, we find *Old Chief* to be of minimal assistance and proceed with the *Strickland* analysis.

In our review of case law from other jurisdictions, we found one case that provides some guidance on this issue. *United States v. Collins*, 60 F.3d 4 (1st Cir. 1995), involved a defendant convicted of being a felon in possession of a firearm. On appeal, defendant claimed defense counsel was ineffective in failing to stipulate to his prior manslaughter conviction, which was the basis of his felony possession charge. The First Circuit Court of Appeals held defense counsel was not ineffective in failing to offer to stipulate because, under the law of the circuit at the time of defendant's trial, the government would not have been required to accept such a stipulation. *Collins*, 60 F.3d at 6-7. At the time of defendant's trial, the law of the circuit was that, "even in the face of an offer to stipulate, the government may choose to present evidence on the one felony necessary to prove the crime charged." *United States v. Collamore*, 868 F.2d 24, 28 (1st Cir. 1989), citing *United States v. Bruton*, 647 F.2d 818, 825 (8th Cir. 1981).

Several months after Collins' trial but before his appeal was heard, the First Circuit decided *United States v. Tavares*, 21 F.3d 1 (1st Cir.

1994), which changed the rule set forth in *Collamore*. The *Tavares* court held that, when a defendant is charged with being a felon in possession of a firearm, evidence of the nature of the prior conviction is not admissible unless special circumstances establish the relevance of the evidence is "sufficiently compelling to survive the balancing test of [Federal Rule of Evidence 403]." *Tavares*, 21 F.3d at 5. Under the pre-*Tavares* rule in effect during Collins' trial, the First Circuit held "counsel made no error in light of the law at the time. The test for an ineffective assistance of counsel claim as articulated in [*Strickland*] is not met." *Collins*, 60 F.3d at 7.

Prior to January 26, 2001, Illinois case law did not require the State to accept a defendant's stipulation of a prior felony conviction when such conviction is a required element of the charged offense. This court, in *People v. Peete*, 318 Ill. App. 3d 961, 969, 743 N.E.2d 689, 695 (2001), followed the United States Supreme Court's rationale in *Old Chief* and held the trial court should "approve a stipulation *requested by the defendant* whereby the parties acknowledge that the defendant is, without further elaboration, a prior convicted felon." (Emphasis in original.) We note in *Tavares*, the First Circuit suggests a defendant does not have to *request* a stipulation for the trial court to be required to exclude evidence of the nature of his prior conviction. *Tavares* simply held evidence of the nature of the prior conviction was not admissible at all, unless it survived the balancing test of Federal Rule of Evidence 403. *Tavares*, 21 F.3d at 5.

Prior to *Peete*, the general practice has been to allow the State to choose whether to accept a defendant's offer to stipulate to a prior felony conviction. This court has *allowed* evidence concerning the nature of a defendant's prior felony conviction when that conviction was an element of the statutory predecessor to current section 24—1.1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 24—1.1), which made it a felony for a prior convicted felon to commit the crime of unlawful use of weapons within five years of his conviction or release from the penitentiary. See *People v. Jennings*, 185 Ill. App. 3d 164, 171-72, 541 N.E.2d 155, 160 (1989). In *Jennings*, 185 Ill. App. 3d at 171-72, 541 N.E.2d at 160, defense counsel refused to stipulate to defendant's prior felony record and we found, *because no stipulation occurred*, it was proper for the State to present testimony of a former Department of Corrections employee to prove defendant's prior felony conviction and identity.

In factual situations such as *Jennings* and the present case, where the defendant does not offer to stipulate to his prior felony conviction, *Peete* has carved an exception and does not require the trial court to automatically exclude any evidence of the nature of the prior convic-

tions. Given this exception, we cannot find defense counsel renders ineffective assistance when counsel does not offer to stipulate to a defendant's prior felony conviction when that conviction is an element of the charged offense.

•3 Because the law at the time of defendant's trial did not *require* the trial court to accept a defendant's stipulation of his prior felony conviction when the prior conviction is an element of the charged offense, we follow the rationale of the First Circuit in *Collins* and find defense counsel's failure to offer to stipulate to defendant's prior felony convictions did not rise to the level of ineffective assistance of counsel under *Strickland*. Further, because defendant did not offer to stipulate in the present case, our finding is supported by our decision in *Peete*, 318 Ill. App. 3d at 969, 743 N.E.2d at 695, in which we specifically held a trial court must accept a stipulation *when requested by defendant*.

### 2. *Failure To File Motion To Vacate*

Defendant next contends defense counsel was ineffective because he did not file a motion to vacate defendant's conviction for unlawful use of weapons as an included offense of unlawful possession of weapons by a felon. We disagree.

As a preliminary matter, defendant concedes this issue was not preserved for review. However, due to the prejudicial effect improper convictions for included offenses may have on a defendant, we have previously reviewed this issue under the plain error doctrine. *People v. Barraza*, 253 Ill. App. 3d 850, 857, 626 N.E.2d 275, 280 (1993). We will, therefore, consider this issue.

•4 Multiple convictions for closely related conduct are prohibited when the convictions are "carved from the same physical act" or when one conviction is for an included offense of the other. *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45 (1977); *People v. Rodriguez*, 169 Ill. 2d 183, 186, 661 N.E.2d 305, 306 (1996). Defendant contends, "[b]ecause the conviction for unlawful possession of a weapon by a felon is carved out of the same physical act as unlawful use of a weapon—the conviction for the lesser possession offense must be vacated."

•5 To determine whether one offense is an included offense of another, we look to the facts alleged in the charging instrument. "[A]n offense is deemed to be a lesser included offense if it is described by the charging instrument." *People v. Novak*, 163 Ill. 2d 93, 107, 643 N.E.2d 762, 769 (1994). Under the charging-instrument approach, "the lesser crime need only relate to the greater to the extent that the charging instrument describes the lesser." *Novak*, 163 Ill. 2d at 107,

643 N.E.2d at 770. Even if an included offense is identified, it may not be proper to instruct the jury on the lesser offense. "A lesser included offense instruction is proper only where the charged greater offense requires the jury to find a disputed factual element that is not required for conviction of the lesser included offense." *Novak*, 163 Ill. 2d at 108, 643 N.E.2d at 770.

The State charged defendant as follows:

"Unlawful Use of Weapons—Class 4 Felony, in that the said defendants knowingly possessed in a motor vehicle, a firearm, namely: a handgun, at a time when they were not on their own land, or in their own abode, or fixed place of business, in violation of 720 ILCS 5/24—1(a)(4)."

"Unlawful Possession of Weapons by Felons—Class 3 Felony, in that the said defendant, a person who has been convicted of a felony under the law of Illinois, namely: Aggravated Battery, in the Circuit Court of Champaign County, Illinois, in cause number 95—CF—734, knowingly possessed on or about his person, a firearm, namely: a handgun, in violation of 720 ILCS 24—1.1(a)."

●6 In this case, the facts as alleged in the charging instrument for the greater offense of unlawful possession of a weapon by a felon do not describe the facts necessary to fulfill the elements of the lesser offense of unlawful use of weapons.

As the State points out, to obtain a conviction on an unlawful use of weapons charge, it must prove defendant was not on his own land or in his fixed place of business. *People v. Navarrete*, 258 Ill. App. 3d 39, 44, 629 N.E.2d 742, 745 (1994). In the present case, the State had to prove defendant knowingly possessed a firearm in a motor vehicle. The situs of the possession is not a material element of unlawful possession of weapons by a felon. *People v. Hester*, 271 Ill. App. 3d 954, 956, 649 N.E.2d 1351, 1354 (1995). Therefore, because the State is required to prove an *additional* element to obtain a conviction on the unlawful use of weapons charge and this element is alleged in the charging instrument, it cannot be an included offense of unlawful possession of weapons by a felon. Accordingly, defense counsel was not ineffective when counsel failed to file a motion to vacate defendant's conviction for unlawful use of weapons.

●7 Defendant next contends even if the unlawful use of weapons charge is not an included offense of unlawful possession of weapons by a felon, due to the unconstitutionality of Public Act 88—680 (Pub. Act 88—680, eff. January 1, 1995 (1994 Ill. Laws 2750)), we must vacate defendant's Class 4 felony conviction and impose a misdemeanor conviction. We agree.

Public Act 88—680 was declared unconstitutional for violating the

single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)). *People v. Cervantes*, 189 Ill. 2d 80, 91, 723 N.E.2d 265, 270 (1999). An amendment in Public Act 88—680 (Pub. Act 88—680, art. 50, § 50—5, eff. January 1, 1995 (1994 Ill. Laws 2750, 2826-29)) increased the class of offense for a first time unlawful use of weapons conviction from a misdemeanor to a Class 4 felony, but the elements of the offense remained unchanged. "The effect of an enactment of an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the unconstitutional amendment." *People v. Brown*, 309 Ill. App. 3d 599, 609, 723 N.E.2d 362, 369 (1999), citing *People v. Gersch*, 135 Ill. 2d 384, 390, 553 N.E.2d 281, 283 (1990). Accordingly, we reduce defendant's conviction for unlawful use of a firearm as a Class 4 felony to that of a Class A misdemeanor and reduce the sentence to 364 days in jail.

## B. State's Accountability Theory

●8 Defendant next contends he was denied his fourteenth amendment due process right to a fair trial because the State, as an alternate theory of guilt, argued the jury could find defendant guilty by accountability on the charge of unlawful possession of weapons by a felon for Gary McFarland's actions but did not prove Gary McFarland was a felon. We find this issue was not properly preserved for review and we decline to consider it under the plain error doctrine.

Again, defendant concedes this issue was not preserved for review because the evidence was not objected to during trial, and defendant did not dispute the State's accountability argument in his posttrial motion for a new trial. However, defendant urges us to consider the issue under the plain error doctrine: "[w]hether or not the erroneous evidence or remarks were objected to at the trial, a court of review will grant relief if the trial error is so prejudicial that real justice has been denied or the verdict of the jury may have resulted from such error."

The plain error rule should only be applied when the evidence is closely balanced or the error alleged by defendant rises to the level of denying defendant a fair trial. *People v. Helm*, 282 Ill. App. 3d 32, 34, 669 N.E.2d 111, 113 (1996).

Both the State and defendant agree the State did present evidence of another theory of defendant's guilt: constructive possession. To support a conviction under the constructive possession theory, the State must show defendant had knowledge of the presence of the weapon, and he had immediate and exclusive control over the area in which the weapon was found. *People v. Hill*, 226 Ill. App. 3d 670, 672, 589 N.E.2d 1087, 1088 (1992). The evidence presented during defendant's

trial clearly supports his conviction under this theory. First, defendant was the driver of the vehicle, and evidence presented at defendant's trial showed he was often seen driving this vehicle. Second, the police found a magazine in the trunk of the car that belonged to one of the handguns found in the trunk, and defendant's bank book was also found in the trunk. Finally, defendant's own actions also speak to his knowledge of the presence of the weapons: he left the scene while the police were searching the vehicle.

Even though the State presented both theories to the jury, evidence of constructive possession was established. The jury could have found, beyond a reasonable doubt, defendant was guilty of these offenses based on constructive possession. Because the State presented alternate theories of defendant's guilt and because it is entirely possible any rational trier of fact could have found the essential elements of the charged offenses beyond a reasonable doubt based on the constructive possession argument, we find any potential error in the State's presentation of its accountability theory does not rise to the level of plain error and, therefore, the issue is forfeited.

## III. CONCLUSION

We find defense counsel's failure to stipulate to defendant's prior felony convictions and his failure to file a motion to vacate defendant's conviction for unlawful use of weapons did not rise to the level of ineffective assistance of counsel. Defendant forfeited the issue of whether he was denied his fourteenth amendment due process right to a fair trial, and we decline to apply the plain error doctrine because sufficient evidence was presented to convict defendant beyond a reasonable doubt under a constructive possession theory. We reduce defendant's Class 4 felony conviction of unlawful use of weapons to a Class A misdemeanor, modify the sentence therefor to 364 days in jail, and remand for issuance of an amended judgment of sentence so reflecting.

Affirmed as modified and remanded with directions.

MYERSCOUGH, J., concurs.

JUSTICE COOK, specially concurring in part and dissenting in part:

I respectfully dissent from that portion of the majority opinion which affirms the defendant's conviction of unlawful use of weapons.

After searching the car in which defendant was located, the police found three handguns in the glove compartment: one 9 millimeter and

two .25 calibers. Because defendant was a previously convicted felon, he was charged with one count of unlawful possession of weapons by a felon (720 ILCS 5/24—1.1(a) (West 1998)). He was also charged with one count of unlawful use of weapons (720 ILCS 24—1(a)(4) (West 1996)). Each information used identical language, alleging possession of "a handgun."

Defendant claims on appeal that his trial counsel was ineffective for failing to file a motion to vacate one of his convictions under the one-act, one-crime rule. The majority properly reviews this claim under the plain error doctrine. 324 Ill. App. 3d at 202-03. However, the majority's analysis of the one-act, one-crime rule is incomplete.

The one-act, one-crime rule was developed in *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 845 (1977). Its purpose was to prevent pyramiding in sentencing. *King* recognized that prejudice will result to a defendant where more than one offense is carved from the same physical act. *King*, 66 Ill. 2d at 566, 363 N.E.2d at 844. It also recognized that, in the case of multiple acts, prejudice may result where one offense is a lesser included offense of another. *King*, 66 Ill. 2d at 566, 363 N.E.2d at 844. Therefore, analysis under the one-act, one-crime rule is a two-step process: we ask whether multiple charges were based upon the same physical act and, if not, we go on to ask whether one charge is a lesser included offense of another. The majority opinion, however, neglects to undertake the primary, single-act inquiry, instead launching immediately into a discussion of whether one of the charges was a lesser included offense of the other.

Possessory offenses, like those at issue here, have always posed a special problem under the single-act component of the one-act, one-crime rule. According to *King*, a physical act means "any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566, 363 N.E.2d at 844-45. Under that definition, however, complications arise when the acts alleged are possessory in nature. Consider the case of a defendant apprehended while in possession of one kilogram of cocaine. Charged as such, the offense carries a penalty of between 15 years' and 60 years' imprisonment. 720 ILCS 570/401(a)(2)(D) (West Supp. 1999). But suppose the prosecutor chooses to charge the offense in another way. Suppose the prosecutor decides to charge the defendant with 66 separate counts of possession of cocaine between 15 and 100 grams (720 ILCS 570/401(a)(2)(A) (West Supp. 1999)). The prosecutor may even draw some support from the case law for so doing. See *People v. Green*, 199 Ill. App. 3d 927, 932, 557 N.E.2d 939, 942 (1990) (cocaine held in different pockets may support separate charges). Now each of these 66 separate counts of possession will carry a term of between 6 years' and 30 years' imprisonment. 720

ILCS 570/401(a)(2)(A) (West Supp. 1999). But because of the nature of the offense, each of these sentences must be served consecutively (730 ILCS 5/5—8—4(a)(iii) (West Supp. 1999)), resulting in a minimum overall term of 396 years' imprisonment. Clearly, it is this type of arbitrary charging and sentencing treatment which the *King* rule seeks to forestall.

This case presents the same type of problem. Should we say that Lindsey committed three separate but simultaneous acts, each being that of possessing a single gun? Or should we say that Lindsey committed only one act—possessing three guns? From a standpoint of comparative culpability, the former approach may seem preferable. Possessing, *e.g.*, a crate of weapons seems to deserve greater punishment than possessing merely a single gun, if only because the inference arises that the defendant may be trafficking arms. However, such reasoning quickly leads back to the type of extreme pyramiding considered in the cocaine hypothetical above. (Should we then allow multiple convictions where a felon possesses only a few guns, but not a great many?)

The supreme court recently addressed the one-act, one-crime rule, although unfortunately not in a possessory context. In *People v. Crespo*, 203 Ill. 2d 335, 337 (2001), the defendant was charged with and convicted of multiple offenses, stemming from the stabbing of one of his victims. He had stabbed that victim three times. *Crespo*, 203 Ill. 2d at 339. The court reiterated that, according to precedent, each separate stab could be considered a separate act, supporting a separate offense. *Crespo*, 203 Ill. 2d at 341-42. However, the court noted that the counts charging the defendant had not differentiated between the separate stab wounds. The court found that to apportion the acts for the first time on appeal would be profoundly unfair. *Crespo*, 203 Ill. 2d at 343. It therefore held that to sustain multiple convictions, an indictment must indicate that the State intends to treat the conduct of the defendant as multiple acts. *Crespo*, 203 Ill. 2d at 345. Thus, while the State could have obtained multiple convictions by differentiating between acts in the charging instruments, in fact it had not. *Crespo*, 203 Ill. 2d 344. One of the defendant's convictions was reversed. *Crespo*, 203 Ill. 2d at 345-46.

Similarly, the instruments charging Lindsey here do not differentiate between the handguns found in the glove box. Each speaks only of "a handgun." Therefore, under *Crespo*, Lindsey's conviction for unlawful use of a weapon must be vacated as the less serious offense. But, unlike situations such as that presented by *Crespo*, involving "truly" physical acts such as stabbing, it also remains to be seen under what circumstances, if any, the State may charge as separate "acts" the various physical components of purely possessory offenses. See *People*

*v. Williams*, 302 Ill. App. 3d 975, 978, 707 N.E.2d 980, 982 (1999) (simultaneous possession of gun and drugs was but a single act which could not support charges of both armed violence and unlawful possession of a weapon by a felon).