NO. 4-03-0605

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

          Plaintiff-Appellee,

          v.

BRIAN S. PEACOCK,

          Defendant-Appellant.

)

)

)

)

)

)))

Appeal from

Circuit Court of

Champaign County

No. 02CF1816

Honorable

Jeffrey B. Ford,

Judge Presiding.

JUSTICE APPLETON delivered the opinion of the court:

A jury found defendant, Brian S. Peacock, guilty of home invasion (720 ILCS 5/12-11(a)(2) (West 2002)), aggravated battery (720 ILCS 5/12-4(b)(1) (West 2002)), and domestic battery with a previous domestic-battery conviction (720 ILCS 5/12-3.2(a)(1) (West 2002)).  The trial court sentenced him to concurrent terms of imprisonment.  The sentences on the latter two convictions were extended terms.  

Defendant appeals on five grounds.  First, he argues his convictions violated the one-act, one-crime rule.  Second, the extended-term sentences were unauthorized by statute and, therefore, void.  Third, the domestic-battery statute (720 ILCS 5/12-3.2(a)(1) (West 2002)) is unconstitutionally vague as applied to him.  Fourth, the trial court failed to inquire into his 
pro
 
se
 posttrial allegations of ineffective assistance of counsel.  Fifth, he was entitled to an additional 21 days of presentence credit.  

We find no violation of the one-act, one-crime rule.  We find no vagueness in the domestic-battery statute.  We agree, however, with defendant's remaining contentions.  Therefore, we vacate the extended-term portions of the sentences for aggravated battery and domestic battery, we grant 21 additional days of presentence credit, and we remand this case with directions to issue an amended judgment at sentence and to perform the preliminary investigation required by 
People v. Krankel
, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), and its progeny.  

I. BACKGROUND

The evidence at trial showed that defendant and Kelly Slade had been dating off and on for about eight years.  In the summer of 2002, they became engaged, but Slade broke off the engagement some months before the incident in this case.  Defendant still overnighted at her apartment now and then and used it as his mailing address, but he did not live there.

Late at night on October 19, 2002, Slade was asleep in her apartment when she was awakened by a telephone call.  It was defendant, and he wanted to come in.  She rose from the couch and looked through the peephole of her door:  defendant was standing in the hall.  She refused to let him in and told him to go away.  He called back immediately, and while she was on the line with him, he removed the screen of a living-room window and climbed into her apartment.

Defendant snatched the telephone out of Slade's hand, threw it across the room, and yanked the telephone cord out of the wall.  Then he proceeded to administer a beating that, according to Slade, lasted about two hours.  He punched and slapped her in the face.  He dragged her by the hair and kicked her in the arms and legs.  He choked her with his hands and with a towel, telling her he loved her and wanted to marry her and would not let her break up with him.  At some point, he picked up her son's aluminum baseball bat (her son was staying overnight at a friend's house) and hit her in the arms, legs, and stomach with it--not "full blows" but hard enough to "get [her] attention" and inflict pain--all the while telling her the "[s]ame stuff":  "[']I love you.  You can't do this to me.  Don't leave me.[']"  Eventually, Slade persuaded him to desist from beating her by saying she needed to go the emergency room.  He reluctantly agreed to let her go on condition that she not report him to the police.  The jury found defendant guilty of all three counts of the information.

On May 28, 2003, after conviction but before sentencing, defendant filed the following letter:

"Judge Ford[,]

My name is Brian Scott Peacock.  [M]y trial was in your courtroom on [May 21, 2003,] and I was found guilty of [the] charges[.]  [T]he reason I [am] writing you this letter is because my attorney[,] John Taylor[,] did not represent [me] to the full[e]st of his ability[.]  [T]he reason I say that is because he did not send out any [subpoenas] for all my [witnesses] and he also did not cross[-]examine the [witnesses] to prove [whether] their test[i]mony was cred[i]ble or not.  [H]e would not ask any of the questions I wanted him to ask or show how the victim told the police and investigators two different stories in the motion of discovery.  [He failed to elicit] the fact that I still lived in the house until the day I turned myself [in to] the Champaign County jail[.]  [F]or that reason[,] I would like for you to grant me a new trial so I can have all of these things brought forth."

On May 29, 2003, defense counsel filed a posttrial motion raising other issues.

In a hearing on July 7, 2003, the trial court denied defense counsel's posttrial motion and, without responding to defendant's letter, proceeded to sentencing.  After considering the presentence report and the arguments of counsel regarding an appropriate sentence, the court told defendant:  "[Y]ou have the right to make a statement to the [c]ourt, state anything you wish to state, anything *** you think that the [c]ourt should know before you are sentenced."  Defendant made a statement in allocution, in which he did not mention his letter to the court.  The court asked defendant if he had anything else to say.  Defendant said no.  For home invasion, the trial court sentenced him to 22 years' imprisonment.  On the other two convictions, the court imposed maximum extended terms of imprisonment:  10 years for aggravated battery and 6 years for domestic battery.  The court allowed 196 days of presentence credit.

This appeal followed.

II. ANALYSIS

A. The One-Act, One-Crime Rule

1. 
Were the Convictions Based on the Same Physical Act
?

Defendant argues the one-act, one-crime rule in 
People v. King
, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45 (1977),  requires us to vacate the convictions of aggravated battery and domestic battery.  We consider this issue 
de
 
novo
.  
People v. Dryden
, 349 Ill. App. 3d 115, 124, 811 N.E.2d 302, 310 (2004).  

The one-act, one-crime rule requires us to ask two questions.  The first question is "whether [the] defendant's conduct consisted of separate acts or a single physical act."  
People v. Rodriguez
, 169 Ill. 2d 183, 186, 661 N.E.2d 305, 306 (1996).  One cannot carve multiple convictions out of "precisely the same physical act."  
Rodriguez
, 169 Ill. 2d at 186, 661 N.E.2d at 306.  If we find multiple acts, we ask a second question:  "whether any of the offenses are lesser[-]included offenses."  
Rodriguez
, 169 Ill. 2d at 186, 661 N.E.2d at 306.  One cannot convict a defendant of both the greater offense and the lesser-included offense.  
Rodriguez
, 169 Ill. 2d at 186, 661 N.E.2d at 306-07.

In 
People v. Tate
, 106 Ill. App. 3d 774, 779, 436 N.E.2d 272, 276 (1982), we disagreed that the convictions of home invasion and aggravated battery in that case had been "'carved' from the same act."  The knifing of the victim in 
Tate
 was the entire basis of the aggravated battery but only part of the basis of the home invasion, which included an additional act:  the defendant's unauthorized entry into the dwelling place.  We reasoned that "the entry by the assailant in[to] the *** home was a separate act which was an important and required part only of the home invasion offense."  
Tate
, 106 Ill. App. 3d at 778, 436 N.E.2d at 275. 

Arguably, 
Tate
 is distinguishable because, as we remarked in that case, the defendant cited no authority for the proposition that two convictions had been carved out of the same physical act if the act served as the complete basis of one conviction but only part of the basis of the other conviction.  
Tate
, 106 Ill. App. 3d at 778-79, 436 N.E.2d at 276.  In the present case, defendant cites two cases that appear to stand for precisely that proposition.  In 
People v. Monigan
, 204 Ill. App. 3d 686, 690, 561 N.E.2d 1358, 1360-61 (1990), and 
People v. Bell
, 327 Ill. App. 3d 238, 243, 764 N.E.2d 551, 555 (2002), the Third District held that home invasion and aggravated battery were based on the same "act" and, therefore, 
King
 required the vacation of the conviction for aggravated battery.  The Third District reasoned that "a conviction for aggravated battery could not stand where it was based upon the same act as that involved in the 
injury
 
element
 of home invasion."  (Emphasis added.)  
Monigan
, 204 Ill. App. 3d at 690, 561 N.E.2d at 1360-61.  

We have difficulty reconciling 
Monigan
 and 
Bell
 with 
People v. Lobdell
, 121 Ill. App. 3d 248, 252, 459 N.E.2d 260, 263 (1983), in which the Third District reasoned as follows:  "Since entry into the victim's home was only part of the home invasion offense and the sole act of the residential burglary offense, the two offenses were not carved from the same physical act."  See also 
People v. Marston
, 353 Ill. App. 3d 513, 519, 818 N.E.2d 1261, 1266 (2004), 
appeal
 
denied
, No. 99750 ("convictions of aggravated battery and home invasion do not violate one-act, one-crime principles[,] despite the infliction of only one injury[,] because [the] defendant's entry into the home was a separate act on which the home invasion charge was based"); 
People v. Damico
, 309 Ill. App. 3d 203, 217, 722 N.E.2d 194, 206 (1999) (same).

We also have difficulty reconciling 
Monigan
 and 
Bell
 with the supreme court's decision in 
People v. McLaurin
, 184 Ill. 2d 58, 703 N.E.2d 11 (1998), and our own decision in 
People v. Priest
, 297 Ill. App. 3d 797, 698 N.E.2d 223 (1998)--decisions allowing a conviction for home invasion to coexist with a conviction for another offense even though the injury supporting the home invasion was the entire basis of the other conviction.  In  
McLaurin
, 184 Ill. 2d at 67-68, 703 N.E.2d at 16, the defendant entered the victim's house, tied him up, and killed him by dousing him with gasoline and setting him on fire.  On appeal, the defendant argued that "the convictions for intentional murder and home invasion [violated the one-act, one-crime rule because they] resulted from the same physical act, that is, the setting of the fire."  
McLaurin
, 184 Ill. 2d at 105, 703 N.E.2d at 33.  The supreme court disagreed:  "[T]he two offenses were not carved from the same physical act of setting the fire where the offense of home invasion involved an additional physical act of entering the dwelling of the victim."  
McLaurin
, 184 Ill. 2d at 105, 703 N.E.2d at 33.

In 
Priest
, 297 Ill. App. 3d at 802, 698 N.E.2d at 227, we held that convictions of home invasion and domestic battery were based upon interrelated acts rather than a single physical act.  "The fact that [the] defendant unlawfully entered [the] home [was] an overt or outward manifestation supporting the home invasion conviction, a separate act from causing [the victim] bodily harm, [which] support[ed] the domestic[-]battery conviction."  
Priest
, 297 Ill. App. 3d at 802, 698 N.E.2d at 227. 

Thus, we respectfully disagree with 
Monigan
 and 
Bell
. When comparing home invasion and aggravated battery in those cases, the Third District effectively reduced home invasion to the mere intentional infliction of an injury.  An offense, however, can consist of more than one act.  As charged in the present case, home invasion has two elements:  the unauthorized entry of a dwelling and the intentional injury of a person therein.  720 ILCS 5/12-11(a)(2) (West 2002).  One element is just as much as physical act as the other.  See 
King
, 66 Ill. 2d at 566, 363 N.E.2d at 844-45 (defining an "act" as "any overt or outward manifestation which will support a different offense").  "'As long as there are multiple acts as defined in 
King
, their interrelationship does not preclude multiple convictions ***.'"  (Emphasis omitted.)  
Rodriguez
, 169 Ill. 2d at 189, 661 N.E.2d at 308, quoting 
People v. Myers
, 85 Ill. 2d 281, 288, 426 N.E.2d 535, 538 (1981).  The convictions in this case were based on interrelated 
acts
 rather than "
precisely
 the same physical 
act
."  (Emphases added.)  See 
Rodriguez
, 169 Ill. 2d at 186, 661 N.E.2d at 306.

2. 
Was Any Offense a Lesser-Included Offense of Another
?

Having determined that the convictions were based on  interrelated acts rather than the same act, we proceed to the second prong of 
Rodriguez
:  are any of the offenses lesser-included offenses?  See 
Rodriguez
, 169 Ill. 2d at 186, 661 N.E.2d at 306.  Defendant cites two cases, one from the Second District (
Damico
, 309 Ill. App. 3d at 218, 722 N.E.2d at 206) and the other from the Third District (
People v. Engle
, 351 Ill. App. 3d 284, 290, 813 N.E.2d 761, 767-68 (2004)), holding that aggravated battery is an included offense of home invasion.

Generally, courts have taken two different approaches to identifying lesser-included offenses:  the abstract-elements approach and the charging-instrument approach.  
People v. Bowens
, 307 Ill. App. 3d 484, 492, 718 N.E.2d 602, 609 (1999).  The former approach compares the statutory elements of the offenses, whereas the latter approach compares the facts alleged in the charging instrument.  
Bowens
, 307 Ill. App. 3d at 492-93, 718 N.E.2d at 609.  In 
Priest
, 297 Ill. App. 3d at 804, 698 N.E.2d at 228, we used the abstract-elements approach to find that domestic battery was not an included offense of home invasion and that the two convictions therefore did not violate 
King
.  See 
Bowens
, 307 Ill. App. 3d at 492, 718 N.E.2d at 609 (citing 
Priest
 among the group of cases adopting the abstract-elements approach).  We acknowledged that under the charging-instrument approach (which we implicitly declined to use in that case), domestic battery would have been an included offense.  
Priest
, 297 Ill. App. 3d at 803, 698 N.E.2d at 227.  Later, in 
People v. Lee
, 311 Ill. App. 3d 363, 370, 724 N.E.2d 557, 563 (2000),
 rev'd in part on other grounds
, 213 Ill. 2d 218, 821 N.E.2d 307 (2004), and 
People v. Lindsey
, 324 Ill. App. 3d 193, 200, 753 N.E.2d 1270, 1277 (2001), we used the charging-instrument approach to decide whether one offense was an included offense of another for purposes of 
King
.  In neither of those cases did we mention 
Priest
.  

More than once, the supreme court has "reaffirmed its preference for the charging-instrument approach to identifying lesser[-]included offenses."  
McLaurin
, 184 Ill. 2d at 104, 703 N.E.2d at 33, citing 
People v. Novak
, 163 Ill. 2d 93, 643 N.E.2d 762 (1994).  In 
Rodriguez
, the supreme court referred to the indictment, not to the abstract statutory elements, when deciding whether home invasion was a lesser-included offense of aggravated criminal sexual assault.  
Rodriguez
, 169 Ill. 2d at 190, 661 N.E.2d at 308 ("The indictment refers to different conduct for each offense").  We will follow the supreme court's lead by using the charging-instrument approach to identify lesser-included offenses for purposes of the one-act, one-crime rule.  

To determine whether one offense is an included offense of another, we look at the 
facts
 alleged in the charging instrument.  
McLaurin
, 184 Ill. 2d at 104, 703 N.E.2d at 33; 
Lindsey
, 324 Ill. App. 3d at 200, 753 N.E.2d at 1277.  (Thus, our inquiry under the second prong of 
Rodriguez
 is broader than our inquiry under the first prong.  Under the first prong, we were concerned with only one type of fact:  physical acts.  See 
People v. Harvey
, 211 Ill. 2d 368, 389-90, 813 N.E.2d 181, 195 (2004).)  Again, whether an offense is a lesser-included offense of another depends on the charging instrument, not on the abstract statutory definitions of the offenses.  See 
People v. Jones
, 207 Ill. 2d 122, 143, 797 N.E.2d 640, 652 (2003) (Fitzgerald, J., specially concurring).  From one case to another, charging instruments will vary in the facts that they allege, even if they allege the same crime.  Therefore, just because courts have concluded in other cases that domestic battery or aggravated battery was a lesser- included offense of home invasion, it does not follow that we should so conclude from the charging instrument in the present case.  See 
Jones
, 207 Ill. 2d at 143, 797 N.E.2d at 652 ("
depending upon the language in the charging instrument
, theft may be a lesser-included offense of residential burglary" (emphasis added)).  If the greater offense, 
as set forth in the charging instrument
, also describes a lesser offense, the lesser offense is an included offense.  720 ILCS 5/2-9(a) (West 2002); 
McLaurin
, 184 Ill. 2d at 104, 703 N.E.2d at 33; 
Lindsey
, 324 Ill. App. 3d at 200, 753 N.E.2d at 1277.  If the lesser offense has an element, however, that the greater offense lacks, the greater offense does not describe the lesser offense, and the lesser offense, therefore, is not an included offense.  See 
McLaurin
, 184 Ill. 2d at 105, 703 N.E.2d at 33; 
Lindsey
, 324 Ill. App. 3d at 201, 753 N.E.2d at 1277.    

The State alleged the following facts in the count of home invasion (which, being a Class X felony (720 ILCS 5/12-11(c) (West 2002)), was the greater offense in this case):

"[D]efendant[,] not a peace officer acting in the line of duty, knowingly and without authority entered the dwelling place of another ***, knowing that one or more persons were present[,] and intentionally caused injuries to Kelly Slade[,] a person therein[,] by beating her ***."

The State alleged the following facts in the count of aggravated battery, a Class 3 felony (720 ILCS 5/12-4(e) (West 2002)):

"[D]efendant, in committing a battery ***, without legal justification and by use of a deadly weapon, an aluminum bat, knowingly caused bodily harm to Kelly Slade, in that the said defendant beat her with the bat ***."

The State alleged the following facts in the count of domestic battery, a Class 4 felony (720 ILCS 5/12-3.2(b) (West 2002)):

"[D]efendant, knowingly and without legal justification, caused bodily harm to Kelly Slade, a family or household member of the defendant, in that the said defendant beat her with his hands, and the said defendant[,] ha[d] been previously convicted of [d]omestic [b]attery ***."

According to the charging instrument, aggravated battery has a factual element that home invasion lacks:  use of a deadly weapon.  To prove home invasion, the State had to prove that defendant intentionally injured Slade by beating her--but not that he beat her with a weapon, let alone a deadly weapon.  According to the charging instrument, domestic battery has two factual elements that home invasion lacks:  Slade's identity as a family or household member and defendant's previous conviction of domestic battery.  
Ergo
, neither aggravated battery nor domestic battery is a lesser-included offense of home invasion.  See 
McLaurin
, 184 Ill. 2d at 105, 703 N.E.2d at 33; 
Lindsey
, 324 Ill. App. 3d at 201, 753 N.E.2d at 1277.

3. 
Was It Necessary To Distinguish Between the Blows
?

On the authority of 
People v. Crespo
, 203 Ill. 2d 335, 788 N.E.2d 1117 (2001), defendant argues that because the charging instrument and the prosecutor's arguments at trial failed to distinguish between the generalized beating in the home-invasion count and the beatings in the aggravated-battery and domestic-battery counts, we must vacate the convictions on the latter two counts.  

In 
Crespo
, 203 Ill. 2d at 338, 788 N.E.2d at 1119, the evidence at trial revealed that the defendant had stabbed the victim three times.  The State charged him with one count of armed violence and two counts of aggravated battery (one count based on battery with a deadly weapon and the other based on great bodily harm).  
Crespo
, 203 Ill. 2d at 342-43, 788 N.E.2d at 1121.  The count of armed violence was predicated on the count of aggravated battery with a deadly weapon.  
Crespo
, 203 Ill. 2d at 339, 788 N.E.2d at 1119.  Rather than apportion the offenses among the three stab wounds, the indictment treated the wounds as one infliction of bodily harm, "charg[ing] [the] defendant with the same conduct under different theories of criminal culpability."  
Crespo
, 203 Ill. 2d at 342, 788 N.E.2d at 1121.  On appeal, the State tried to obviate the one-act, one-crime rule by arguing that each of the three stab wounds could support an independent conviction.  
Crespo
, 203 Ill. 2d at 340, 788 N.E.2d at 1120.  In trial court, however, the State had "treat[ed] the conduct of the defendant as a single act."  
Crespo
, 203 Ill. 2d at 344, 788 N.E.2d at 1122.  The supreme court stated:  "We believe that to apportion the crimes among the various stab wounds for the first time on appeal would be profoundly unfair."  
Crespo
, 203 Ill. 2d at 343, 788 N.E.2d at 1122.

Again, in 
Crespo
, 203 Ill. 2d at 342, 788 N.E.2d at 1121, the "counts charg[ed] [the] defendant with the same conduct under different theories of criminal culpability."  That was the crucial finding on which the supreme court's analysis in 
Crespo
 turned.  In the present case, as we have explained, the charge of home invasion was based on different conduct than the counts of aggravated battery and domestic battery.  The conduct was different in that home invasion included an unauthorized entry, a physical act that the other two offenses lacked.  For purposes of the one-act, one-crime rule, the State has no occasion to differentiate between the blows defendant inflicted upon Slade, because even if the count of home invasion refers to the same blows as the counts of aggravated battery and domestic battery, 
King
 allows all three convictions to stand.

B. The Extended-Term Sentences

1. 
Has Defendant Forfeited This Issue
?

Defendant argues that because aggravated battery and domestic battery were less serious offenses than home invasion, the trial court lacked statutory authority to impose extended-term sentences on the convictions of aggravated battery and domestic battery.  See 730 ILCS 5/5-8-2(a) (West 2002); 
People v. Jordan
, 103 Ill. 2d 192, 206, 469 N.E.2d 569, 575 (1984).  The State argues that defendant has forfeited this issue by omitting it from his posttrial motion.  See 730 ILCS 5/5-8-1(c) (West 2002); 
People v. Reed
, 177 Ill. 2d 389, 395, 686 N.E.2d 584, 586 (1997).

As defendant points out, the supreme court held in 
People v. Thompson
, 209 Ill. 2d 19, 27, 805 N.E.2d 1200, 1204-05 (2004), that an extended-term sentence unauthorized by statute was void and a defendant could attack such a sentence for the first time on appeal.  The State argues:  "Defendant's reliance on 
Thompson
 is misplaced because in 
Thompson
 the State conceded that the extended-term sentence involved was void ***."  On the contrary, that was 
not
 the concession the State made in 
Thompson
.  The State conceded that the extended-term sentence was "improper," 
i.e.
, unauthorized by law (
Thompson
, 209 Ill. 2d at 23, 805 N.E.2d at 1202), but the State argued that this impropriety made the sentence "merely voidable," not void, and that by failing to raise the issue in a motion to withdraw the guilty plea or in his postconviction petition, the defendant had "waived" or forfeited his right to challenge the extended-term sentence (
Thompson
, 209 Ill. 2d at 22, 805 N.E.2d at 1202).  The supreme court disagreed.  After a lengthy analysis, the supreme court concluded that the extended-term sentence was "void" and the defendant could attack such a void order "at any time or in any court, either directly or collaterally.  An argument that an order or judgment is void is not subject to waiver."  
Thompson
, 209 Ill. 2d at 27, 805 N.E.2d at 1204-05.  The State's claim of forfeiture in this case is simply untenable.

2. 
Did Statutory Law Authorize These Extended-Term Sentences
?  

If a trier of fact convicts the defendant of multiple offenses of differing classes, section 5-8-2(a) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-8-2(a) (West 2002)) authorizes the trial court to impose an extended-term sentence only on the offense within the most serious class.  
Jordan
, 103 Ill. 2d at 206, 469 N.E.2d at 575.  The supreme court has construed section 5-8-2(a) to allow a single exception to that rule:  a court may impose extended-term sentences "on separately charged, differing class offenses that arise from 
unrelated courses of conduct
" (emphasis added) (
People v. Coleman
, 166 Ill. 2d 247, 257, 652 N.E.2d 322, 327 (1995)), that is, courses of conduct in which "there was a substantial change in the nature of the defendant's criminal objective" (
People v. Bell
, 196 Ill. 2d 343, 354, 751 N.E.2d 1143, 1149 (2001)).

In the present case, the jury found defendant guilty of home invasion, a Class X felony (720 ILCS 5/12-11(c) (West 2002)); aggravated battery, a Class 3 felony (720 ILCS 5/12-4(e) (West 2002)); and domestic battery with a previous domestic-battery conviction, a Class 4 felony (720 ILCS 5/12-3.2(b) (West 2002)).  Home invasion was the most serious offense.  Therefore, unless these three offenses arose from unrelated courses of conduct in which there was a substantial change in the nature of defendant's criminal objective, statutory law authorized the trial court to impose an extended-term sentence only on the conviction of home invasion.  

Calling these three offenses unrelated would be unrealistic.  Defendant might have had immediate subsidiary objectives, such as preventing Slade from calling the police, but his overall objective--his ultimate purpose behind all three offenses--was to dissuade her from breaking up with him.  He kept saying the "same stuff" over and over again:  that he "wanted to be with [her]" and "work it out" and she "couldn't leave him."  The record contains no evidence of a substantial change in the nature of his criminal objective.  

It follows that the extended-term portion of the sentences on the convictions of aggravated battery and domestic battery are void.  We vacate the extended-term portion of those sentences, thereby reducing the sentences to the maximum nonextended terms of imprisonment authorized by the Unified Code:  five years for aggravated battery (730 ILCS 5/5-8-1(a)(6) (West 2002)) and three years for domestic battery with a previous domestic-battery conviction (730 ILCS 5/5-8-1(a)(7) (West 2002)).  See 
Thompson
, 209 Ill. 2d at 29, 805 N.E.2d at 1206.

C. Constitutional Challenge to the Domestic-Battery Statute

The victim of domestic battery is a "family or household member as defined in subsection (3) of [s]ection 112A-3 of the Code of Criminal Procedure of 1963, as amended [(725 ILCS 5/112A-3(3) (West 2002))]."  720 ILCS 5/12-3.2(a)(2) (West 2002).  Section 112A-3(3) defines "family or household members" to include "persons who *** 
have had 
a dating or engagement relationship."  (Emphasis added.)  725 ILCS 5/112A-3(3) (West 2002).  

Defendant argues that because section 112A-3(3) places no temporal limit on the verb "have had," the domestic-battery statute is unconstitutionally vague.  According to defendant, it would be impossible for a reasonable person to ascertain the cutoff date after which the former dating or engagement relationship no longer counts.  That is to say, how much time must pass, after the termination of the relationship, before the battery of an ex-girlfriend or ex-boyfriend will be considered merely simple battery instead of domestic battery--5 months, 5 years, 50 years?  The supreme court recently answered that question in an opinion issued after the parties filed their briefs in this case:  "[T]he statute has no time limit.  But that does not make the statute vague."  
People v. Wilson
, 214 Ill. 2d 394, 400-01, 827 N.E.2d 416, 420 (2005).  It is impossible to identify the time limit not because the statute is vague but because the time limit simply does not exist.  By the very act of complaining about the lack of any temporal boundary to the definition of a "family or household member," one implicitly admits that the definition is, in that respect, sufficiently clear--one might say all too clear.

Thus, even to a hypothetical defendant battering an ex-fiancེ(e) from the distant past, the domestic-battery statute would give fair warning.  In any event, we must decide whether the statute was vague as applied to defendant, not as applied to the whole universe of potential defendants in every conceivable situation.  See 
Wilson
, 214 Ill. 2d at 399, 827 N.E.2d at 420.  In October 2002, defendant beat a woman to whom he had been engaged the previous summer and whom he had dated for the greater part of the previous eight years.  Defendant had adequate notice that Slade conformed to the statutory definition of a "family or household member."  In defendant's case, no law-enforcement officer or trier of fact would have to rely on "private conceptions" of what constituted a dating or engagement relationship.  See 
Wilson
, 214 Ill. 2d at 400, 827 N.E.2d at 420.  We disagree that the domestic-battery statute is vague as applied to defendant.

D. 
Krankel
 Inquiry

In cases in which the defendant has filed a 
pro
 
se
 posttrial motion alleging ineffective assistance of counsel, we ask "whether the trial court conducted an adequate inquiry" into the allegations.  
People v. Moore
, 207 Ill. 2d 68, 78, 797 N.E.2d 631, 638 (2003).  A court can conduct such an inquiry in one or more of the following three ways: (1) questioning the trial counsel, (2) questioning the defendant, and (3) relying on its own knowledge of the trial counsel's performance in the trial.  
Moore
, 207 Ill. 2d at 78-79, 797 N.E.2d at 638.

"The law requires the trial court to conduct some type of inquiry into the underlying factual basis, if any, of a defendant's 
pro
 
se
 posttrial claim of ineffective assistance of counsel."  
Moore
, 207 Ill. 2d at 79, 797 N.E.2d at 638.  In the present case, we make the same observation that the supreme court made in 
Moore
, 207 Ill. 2d at 79, 797 N.E.2d at 638:  "The trial court conducted no inquiry of any sort into defendant's allegations of ineffective assistance of counsel.  Indeed, the record does not show whether the trial court ever read defendant's 
pro
 
se
 posttrial motion."

We also echo the Second District:  "We note that the trial court was not in a position to evaluate all of the ineffective assistance claims simply by relying on facts within its knowledge."  See 
People v. Gilmore
, 356 Ill. App. 3d 1023, 1037, 828 N.E.2d 293, 306 (2005).  Defendant alleged, for instance, that his trial counsel failed to subpoena witnesses.  The record does not reveal who these witnesses were or what they would have said on the stand.  Defendant also alleged that trial counsel refused to use any of his suggested questions in cross-examination.  Although cross-examination is generally a matter of trial strategy (
People v. Pecoraro
, 175 Ill. 2d 294, 326, 677 N.E.2d 875, 891 (1997)), it does not follow that it is 
impossible
 for an attorney to render ineffective performance in cross-examination.  If the cross-examination was objectively unreasonable, it can amount to ineffective assistance if the defendant suffered prejudice.  
People v. Rosemond
, 339 Ill. App. 3d 51, 65, 790 N.E.2d 416, 428 (2003).  Again, we do not know what alleged deficiencies in cross-examination that defendant had in mind--because the trial court never asked him.  "[N]o record at all was made on defendant's claims of ineffective assistance of counsel" and, therefore, "it is simply not possible to conclude that the trial court's failure to conduct an inquiry into those allegations was harmless beyond a reasonable doubt."  
Moore
, 207 Ill. 2d at 81, 797 N.E.2d at 639.

The State argues that because the trial court asked defendant if he had anything to say before sentencing and because defendant never mentioned his 
pro
 
se
 motion for a new trial, he has forfeited the 
Krankel
 issue.  We disagree.  To trigger a 
Krankel
 inquiry, "a 
pro
 
se
 defendant is not required to do any more than bring his or her claim to the trial court's attention."  
Moore
, 207 Ill. 2d at 79, 797 N.E.2d at 638.  Defendant did so in his letter to the trial court.  See  
People v. Giles
, 261 Ill. App. 3d 833, 847, 635 N.E.2d 969, 979 (1994).  Contrary to the State's argument, the court never gave defendant an opportunity to flesh out the factual bases of his posttrial motion.  Rather, the court gave him an opportunity to make a statement in allocution ("anything *** you think that the [c]ourt should know before you are sentenced").  A statement in allocution presupposes that there will be no new trial.  In his letter, defendant requested a new trial.

E. Presentence Credit

The State concedes that defendant is entitled to an additional 21 days of credit for time served.  We find the concession to be warranted by the record.  Defendant should receive credit for all the time he spent in custody before sentencing.  See 730 ILCS 5/5-8-7(b) (West 2002).  The trial court gave him credit for 196 days.  Defendant was in custody from December 3, 2002, until July 7, 2003:  a total of 217 days.  Pursuant to Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), we remand with directions that the trial court issue an amended written judgment of sentence to reflect 217 days' credit for time served.

III. CONCLUSION

For the foregoing reasons, we vacate the extended-term portions of the sentences for aggravated battery and domestic battery.  We modify the judgment to allow 217 days of presentence credit and remand with directions for issuance of an amended judgment of sentence so reflecting.  We also remand this case for the limited purpose of allowing the trial court to conduct the preliminary investigation that 
Krankel
 requires.  We leave it to the trial court to decide, after investigation, whether the claim of ineffective assistance merits a full evidentiary hearing with appointment of new counsel.  If the trial court decides that the claim is spurious or pertains only to trial strategy, it may then deny the motion and leave standing the convictions and sentences (subject to the vacation of the extended-term portions of the sentences).  See 
Moore
, 207 Ill. 2d at 81-82, 797 N.E.2d at 640.

Affirmed in part as modified and judgment vacated in part; cause remanded with directions.

TURNER and McCULLOUGH, JJ., concur.