NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 170439-U

NO. 4-17-0439

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 11, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| GLENN R. BROWNFIELD, | ) | No. 16CF984 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John Casey Costigan, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Presiding Justice Steigmann concurred in the judgment.
Justice Cavanagh dissented.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding (1) any failure to properly admonish
defendant failed to constitute second prong plain-error and (2) the trial court
correctly declined to appoint new counsel for defendant after conducting an
adequate inquiry into defendant's claim of ineffective assistance of counsel.

¶ 2    On February 14, 2017, defendant, Glenn R. Brownfield, pleaded guilty to one

count of criminal sexual abuse, a Class IV felony (720 ILCS 5/11-1.50(a)(2) (West 2016)),

pursuant to a negotiated plea agreement with the State. As part of the agreement, the court

sentenced defendant to two years in prison followed by a one-year period of mandatory

supervised release (MSR).

¶ 3    On March 13, 2017, defendant filed a motion to withdraw his guilty plea, and

during the hearing on his motion, defendant expressed dissatisfaction with defense counsel's

performance. The trial court determined an absence of the necessary factual basis to warrant appointment of new counsel. The defendant then elected to proceed *pro se*, and ultimately, the trial court denied his motion to withdraw his guilty plea.

¶ 4        On appeal, defendant argues the trial court erred by failing to admonish him that his sentence would include a one-year term of MSR. Alternatively, defendant argues this court should remand because the trial court's inquiry into defendant's claim of ineffective assistance of counsel was improper under *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), and its progeny, and the facts required appointment of new counsel. For the following reasons, we affirm.

¶ 5                            I. BACKGROUND

¶ 6               A. Defendant's Plea Agreement and Conviction

¶ 7        In September 2016, the State charged defendant by information with two counts of aggravated criminal sexual abuse, Class 2 felonies (720 ILCS 5/11-1.60(a), (e) (West 2016)) (counts I and II) and attempted aggravated criminal sexual abuse, a Class 3 felony (720 ILCS 5/8-4 (West 2016)) (count III).

¶ 8        In February 2017, the State and defendant entered into a plea agreement. Pursuant to the written agreement signed by the parties, the State would dismiss counts I, II, and III in exchange for defendant's plea of guilty to criminal sexual abuse, a Class 4 felony (720 ILCS 5/11-1.50(a)(2) (West 2016)), and defendant would receive a sentence of two years in prison with credit for 166 days previously served. Under "Additional conditions," the agreement stated defendant would be required to register as a sex offender for 10 years. Absent from the written agreement was any indication that defendant would be required to serve a term of MSR.

¶ 9        At the February 14, 2017, plea hearing, the court addressed defendant, stating:

"It is my understanding that you would be pleading guilty to Count IV of the information ***.

That is a Class IV felony that carries a maximum possible penalty of up to one to three years in the Illinois Department of Corrections and up to a $25,000 fine with one-year mandatory supervised release. That charge carries a minimum penalty of probation or conditional discharge. This offense also carries a registration requirement of ten years of sex offender registration as well.

It is my understanding that you have reached an agreement today to where you would plead guilty to this charge, and that you would pay the fines and costs that are summarized on the supplemental sentencing order that I'm showing to you at this point in time—

* * *

And you would pay the fines and costs that are summarized on the supplemental sentencing order, and that you would be sentenced to two years in the Illinois Department of Corrections. You would have credit for 166 actual days at this point in time, day-for-day credit would apply to the sentence as well.

Your fines and cost would be taken care of within two years from your release from the department. Again, there would be a ten-year registration requirement as a sex offender—for sex offender registration. As part of the plea agreement, Count I through III of the bill of indictment in the case would be dismissed."

¶ 10 Defendant confirmed that the court's statement accurately reflected his understanding of his plea agreement with the State. The court advised defendant he had the right

to plead not guilty and persist in that plea. The court told defendant that by pleading guilty, he would give up his right to trial. The court further explained that by pleading guilty, defendant would relinquish his right to be confronted with the witnesses against him and to cross-examine those witnesses. Defendant stated he understood the rights he would be waiving by pleading guilty. Defendant stated the choice to plead guilty was made of his own free will and that no person forced, threatened, or pressured him to enter the plea.

¶ 11        The State presented the following factual basis for the plea:

> "That on the date alleged in the information that a witness *** who is a job coach at Eugene Field School, was to take a special needs student—being the victim, P.H., in this case—to the ARC, which is an activity and recreation center located in Normal, Illinois. And that on said date that witness observed her student, P.H., being touched on his penis by this defendant; and, further, that because of P.H.'s intellectual level of functioning, he would not have been able to understand the act or consent to the act."

¶ 12        Defendant stipulated to the factual basis, and the court accepted defendant's plea as knowing and voluntary. The court then entered a written judgment sentencing defendant to two years in prison followed by a one-year term of MSR.

¶ 13                    B. Motion to Withdraw Defendant's Guilty Plea

¶ 14        On March 13, 2017, defendant filed a motion to withdraw his guilty plea, asserting that he "had not fully considered nor did he understand the ramifications of his plea."

¶ 15        At the June 8, 2017, motion hearing, defendant's attorney argued that defendant did not "consider properly the ramifications of a plea agreement in this case." When the court asked defendant what he did not understand about the plea agreement, defendant stated his

"brain wasn't working right" and that he "didn't do anything." Defendant then stated, "I think I need to fire my attorney and do it myself or get a different attorney if that happens. But I just wasn't with it that day. I didn't do anything to this young person."

¶ 16        After defendant's comment regarding firing his attorney, the following colloquy occurred:

> "THE COURT: Can you explain to me what [your attorney] has or has not done here to feel that he has not adequately represented—
>
> DEFENDANT: I don't think that he represented me well. I don't know what to say that he's done, but he hasn't done it, because I didn't do anything. He believes the psychiatrist who says that I know more than I did, and I didn't at the time.
>
> THE COURT: Okay.
>
> DEFENDANT: That's the problem.
>
> THE COURT: Is there any witnesses [*sic*] that you gave him names of that you feel he didn't follow up with?
>
> DEFENDANT: No, because I don't even know who it was that I saw now that day, because I'm back with it.
>
> THE COURT: Do you feel there was communication problems between you and [your attorney] in—
>
> DEFENDANT: I think—
>
> THE COURT: —terms of you telling him things—
>
> DEFENDANT: Yes. That he didn't understand.
>
> THE COURT: —that he did not follow up on?

DEFENDANT: Right.

THE COURT: And can you give me any specific examples of those?

DEFENDANT: When I said that I sack tapped a kid, it was because I was thinking that I sack tapped a friend. And I think I told you that in my letter.

\* \* \*

[THE STATE]: Judge, I would object. I think we're going for [*sic*] afield of what we're here for.

THE COURT: He's brought up issues with counsel so I have to perform a *Krankel* examination, and that's what I'm doing at this point in time, in terms of seeing if there's any issues with regard to the representation that would create any *Krankel* issues at this point in time. So that's what the court is doing.

So in terms of specifics, in terms of witness that you wanted he him [*sic*] to follow up with—

DEFENDANT: No, there weren't—

THE COURT: —evidence that you wanted investigated, anything of that nature? Do you feel there's anything that [your attorney] did in that regard that was deficient?

DEFENDANT: Probably. He should have tried to figure out who, or tried to help me figure out who it was I thought the person was I sack tapped. And I don't even—I can't even answer that now. He didn't give me a reason he didn't because the psychiatrist said that I didn't need that because I knew what I was doing.

THE COURT: Okay. Thank you. [Defense counsel], anything you'd like to explain on the *Krankel* issue?

[DEFENSE COUNSEL]: Only that he had more serious charges dropped, and he's going to be out in September. And I don't think communications were bad. I think he got a fantastic opportunity at a great deal, and now he has second thoughts about it. I think he also has issues after he did the plea with the fact that he pled guilty to something. But I can't do anything—that's not deficient counsel on my part, that's just him having second thoughts.

THE COURT: All right. Thank you. Court understands the positions with regard to *Krankel* issue. Court finds that the claim by [defendant] in terms of the *Krankel* issue lacks merit, is conclusitory [*sic*], and it does not show ineffective assistance of counsel. Court finds no *Krankel* violation."

¶ 17 Thereafter, defendant reiterated his desire to represent himself and discharge defense counsel. The court then admonished him of the nature of the charges against him, the minimum and maximum sentences prescribed by law, and his right to the assistance of counsel. The court accepted defendant's waiver of counsel as knowing and voluntary and allowed him to proceed *pro se* on his motion to withdraw his guilty plea.

¶ 18 The court then stated it found nothing in the record to indicate any concerns regarding defendant's fitness to participate in the plea hearing and that defendant had been properly admonished. Accordingly, the court denied defendant's motion to withdraw his guilty plea.

¶ 19 This appeal followed.

¶ 20 II. ANALYSIS

¶ 21        On appeal, defendant argues the trial court erred by failing to admonish him that his negotiated sentence included a one-year term of MSR. Alternatively, defendant argues this court should remand because the court's inquiry into his ineffective assistance of counsel claim was improper under *Krankel* and its progeny and under the circumstances, the court should have appointed new counsel. We discuss each of these issues in turn.

¶ 22                    A. Rule 402 Admonishments

¶ 23        Here, defendant asserts the trial court erred in denying his motion to withdraw his guilty plea where the court failed to admonish him that his negotiated sentence included a one-year term of MSR. "[L]eave to withdraw a plea of guilty is not granted as a matter of right, but as required to correct a manifest injustice." *People v. Evans*, 174 Ill. 2d 320, 326, 673 N.E.2d 244, 247 (1996). We employ *de novo* review when reviewing whether a defendant was properly admonished. *People v. Chavez*, 2013 IL App (4th) 120259, ¶ 14, 998 N.E.2d 143. Where, as here, "a trial court reaches the merits of a motion to withdraw a guilty plea, the decision to grant or deny that motion 'rests in the sound discretion of the circuit court and, as such, is reviewed for an abuse of discretion.' "*People v. Glover*, 2017 IL App (4th) 160586, ¶ 29, 85 N.E.3d 815 (quoting *People v. Hughes*, 2012 IL 112817, ¶ 32, 983 N.E.2d 439).

¶ 24        Before the trial court can accept a guilty plea, there must be substantial compliance with Illinois Supreme Court Rule 402(a)(2) (eff. July 1, 2012). *People v. Boykins*, 2017 IL 121365, ¶ 12, 93 N.E.3d 504. However, the admonition "need not be perfect." *People v. Morris*, 236 Ill. 2d 345, 367, 925 N.E.2d 1069, 1082 (2010). In fact, " 'there is no precise formula in admonishing a defendant of his MSR obligation.' " *Boykins*, 2017 IL 121365, ¶ 16 (quoting *Morris*, 236 Ill. 2d at 366). Substantial compliance occurs when the trial court, before accepting a plea of guilty, admonishes the defendant that a term of MSR will be added to his

sentence. *Id.* ¶ 13; see also *People v. Whitfield*, 217 Ill. 2d 177, 194-95, 840 N.E.2d 658, 669 (2005). In other words, an admonition is sufficient if an ordinary person in the defendant's position would have reasonably understood that MSR would be added to his sentence. *Morris*, 236 Ill. 2d at 366. Further, our supreme court has held it is not necessary that the admonishments "expressly link MSR during the pronouncement of the agreed-upon sentence" in order to satisfy due process. *Boykins*, 2017 IL 121365, ¶ 21.

¶ 25        In order to preserve a sentencing error for review on appeal, a defendant must (1) object to the error in the trial court and (2) raise the issue in a written motion. *People v. Sharp*, 2015 IL App (1st) 130438, ¶ 132, 26 N.E.3d 460. If the defendant fails to preserve an issue, we may review the claim of error only if the defendant establishes plain error, which is "a narrow and limited exception." *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010).

¶ 26        Defendant admits he has forfeited his claim that the trial court neglected to admonish him that his sentence would include a one-year term of MSR where he failed to object at the plea hearing and omitted this issue in his motion to withdraw his guilty plea. Defendant requests that we review this issue for plain error. Specifically, defendant seeks second prong plain-error review.

¶ 27        Case law equates second prong plain-error with structural error—a systemic error which serves to erode the integrity of the judicial process. *People v. Thompson*, 238 Ill. 2d 598, 608, 939 N.E.2d 403, 410 (2010). Few errors are deemed structural. Such errors involve instances where a core justice tenet is compromised. For example, denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation

at trial, denial of a public trial, and a defective reasonable doubt instruction all represent structural errors. *Id.* at 609.

¶ 28 On the other hand, we know an improper admonishment does not automatically require reversing the judgment or vacating the plea. *People v. Davis*, 145 Ill. 2d 240, 250, 582 N.E.2d 714, 719 (1991). Our supreme court has stated, "The violation of a supreme court rule does not mandate reversal in every case \*\*\*, and this court has applied the harmless-error doctrine to errors stemming from the violation of our rules." *People v. Glasper*, 234 Ill. 2d 173, 193, 917 N.E.2d 401, 414 (2009).

¶ 29 Here, assuming error, the failure to properly admonish defendant in this instance falls short of the gravity necessary to constitute second prong plain-error. In this case, the trial court did mention MSR while admonishing defendant. Also, the written sentencing judgment included the MSR period. Missing is any assertion, via a post-trial motion or otherwise, by defendant that he failed to understand the MSR admonishment. Finally, defendant has never claimed he was unaware a period of MSR would follow his agreed sentence. Given the facts before us, we cannot say real justice was denied when the trial court honored the terms of defendant's negotiated plea but provided a less than ideal MSR admonishment. Thus, the court did not abuse its discretion in denying the motion to withdraw the guilty plea. Accordingly, we affirm the court's denial of defendant's motion to withdraw his guilty plea.

¶ 30 B. Adequacy of Preliminary *Krankel* Inquiry

¶ 31 Alternatively, defendant argues this court should remand because the trial court's inquiry into defendant's claim of ineffective assistance of counsel was improper under *Krankel*, 102 Ill. 2d at 189, and its progeny and under the circumstances, the court should have appointed new counsel. Specifically, defendant argues (1) the inquiry was improperly adversarial and

(2) the trial court improperly reached the merits of defendant's claim of ineffective assistance of counsel. We disagree.

¶ 32    When confronted with a defendant's posttrial allegations of ineffective assistance of counsel, our supreme court set out the procedural steps to follow in *People v. Moore*, 207 Ill. 2d 68, 77-78, 797 N.E.2d 631, 637 (2003) (noting the rule that had developed since *Krankel*):

> "New counsel is not automatically required in every case in which a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. Rather, when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed."

¶ 33    A court can conduct an inquiry into allegations counsel was ineffective by doing one or more of the following: "(1) questioning the trial counsel, (2) questioning the defendant, and (3) relying on its own knowledge of the defense counsel's performance in the trial." *People v. Peacock*, 359 Ill. App. 3d 326, 339, 833 N.E.2d 396, 407 (2005). "[A] preliminary *Krankel* inquiry should operate as a neutral and nonadversarial proceeding." *People v. Jolly*, 2014 IL 117142, ¶ 38, 25 N.E.3d 1127. Accordingly, "the State should never be permitted to take an adversarial role against a *pro se* defendant at the preliminary *Krankel* inquiry." *Id.* "Where a defendant's claims are conclusory, misleading, or legally immaterial, or do not bring to the trial court's attention a colorable claim of ineffective assistance of counsel, the trial court may be excused from further inquiry." *People v. Bobo*, 375 Ill. App. 3d 966, 985, 874 N.E.2d 297, 315

(2007). Whether a trial court properly conducted a *Krankel* inquiry is a matter of law which we review *de novo*. *Jolly*, 2014 IL 117142, ¶ 28.

¶ 34                                        1. *Adversarial Role of Defense Counsel*

¶ 35        Defendant argues the trial court improperly conducted the *Krankel* inquiry because it allowed defense counsel to participate in an adversarial way. Defendant, relying on *Jolly*, asserts that the inquiry became adversarial because defense counsel stated:

> "I don't think communications were bad. I think [defendant] got a fantastic opportunity at a great deal, and now he has second thoughts about it. I think he also has issues after he did the plea with the fact that he pled guilty to something. But I can't do anything—that's not deficient counsel on my part, that's just him having second thoughts."

¶ 36        First, defendant's reliance on *Jolly* is inapposite here. The supreme court's decision in *Jolly* addressed the issue of the State's adversarial participation in a *Krankel* inquiry—not defense counsel's. *Id.* ¶ 38. Defendant cites no other precedent applying the rule in *Jolly* to instances of alleged adversarial participation by defense counsel. Furthermore, the trial court was permitted to address defense counsel and provide him an opportunity to relay any facts he may have had related to defendant's complaints. See *Peacock*, 359 Ill. App. 3d at 339. The court's inquiry of defense counsel was limited to one question after a lengthy dialogue with defendant regarding the factual basis for his claim of ineffective assistance of counsel. Accordingly, we find the trial court's inquiry was proper under *Krankel*.

¶ 37                                        2. *Merits of Defendant's Claim*

¶ 38        Defendant further argues the trial court "failed to apply the proper standard" by reaching the merits of defendant's claim of ineffective assistance of counsel. Relying on *People*

*v. Roddis*, 2018 IL App (4th) 170605, 119 N.E.3d 52, defendant argues the court's statement that "the claim by [defendant] in terms of the *Krankel* issue lacks merit, is conclusitory [*sic*], and it does not show ineffective assistance of counsel," constitutes reversible error. We disagree.

¶ 39　Recently, when reviewing *Roddis*, our supreme court rejected this argument. In contrast to defendant's position, the supreme court held "a trial court may consider both the facts and legal merits of a defendant's *pro se* posttrial allegations of ineffective assistance of counsel at the preliminary inquiry stage." *People v. Roddis*, 2020 IL 124352, ¶ 70. Thus, defendant's argument lacks sustainability and we decline any further consideration of such a position.

¶ 40　　　　　　　　　　III. CONCLUSION

¶ 41　For the reasons stated, we affirm the trial court's judgment.

¶ 42　Affirmed.

¶ 43　CAVANAGH, J., dissenting:

¶ 44　I respectfully dissent because the trial court's admonition failed to satisfy *Morris*, which interpreted *Whitfield* as "requir[ing] that defendants be advised that a term of MSR [would] be added to the actual sentence agreed upon in exchange for a guilty plea to the offense charged." *Morris*, 236 Ill. 2d at 367.

¶ 45　An admonition "is sufficient if an ordinary person in the circumstances of the accused would understand it to convey the required warning." (Internal quotation marks omitted.) *Id.* at 366. An ordinary person would understand the trial court's admonition in this case as meaning that MSR is part of the maximum sentence imposable under the law instead of part of the less than maximum sentence bargained for in the plea agreement. The court admonished defendant that a conviction for criminal sexual abuse "carrie[d] a *maximum* possible penalty of up to one to three years in the Illinois Department of Corrections and up to a $25,000

fine with one-year mandatory supervised release." (Emphasis added.) An ordinary person could interpret the court's statement as a warning of what he could expect in a worst-case scenario should he proceed to trial. According to the court's words, if worse came to worse, defendant could potentially face three things: (1) a prison term "of up to" one to three years, (2) a fine "up to" $25,000, *and* (3) a one-year MSR term. It is unclear, from the court's admonitions, that MSR attaches to defendant's sentence regardless if he pleads guilty or goes to trial. The court was describing to defendant the "maximum possible penalty," not, as *Morris* required, "the actual sentence agreed upon in exchange for a guilty plea to the offense charged." *Id.* at 367. The noncompliance with *Morris* is clear.

¶ 46   Even so, the majority notes that in *Davis*, 145 Ill. 2d at 250, the supreme court stated: "The failure to properly admonish a defendant, alone, does not automatically establish grounds for reversing the judgment or vacating the plea." But the case the supreme court cited in support of that statement was *People v. Cohn*, 91 Ill. App. 3d 209, 213 (1980), which is readily distinguishable from the present case. In *Cohn*, the trial court, before accepting the defendant's guilty plea, failed to admonish her that she had the right to a trial by jury (the court told her only that she had the right to a " 'trial' ") (*id.* at 212). This was a noncompliance with Illinois Supreme Court Rule 402(a)(4) (eff. Sept. 17, 1970). See *Cohn*, 91 Ill. App. 3d at 212. It was a harmless error, though, because in the sentencing hearing, the defendant admitted knowing all along that she had the right to a jury trial (*id.* at 213). Thus, despite the defective admonition, the record in *Cohn affirmatively showed* the defendant's prior (pre-plea) knowledge of her right to a jury trial. See *id.* at 212 ("A waiver of the jury trial right may not be presumed from a completely silent record ***.") By contrast, the record in the present case does not *affirmatively show* that

- 14 -

defendant knew, before pleading guilty, that he would have to serve one year of MSR as a result of his guilty plea.

¶ 47       This requirement of an affirmative showing brings me to the second reason why the majority excuses what it assumes, for the sake of argument, to be a noncompliance with *Morris*. The majority observes that although the written sentencing judgment stated the MSR period, defendant never asserted, "via a post-trial motion or otherwise," that he "was unaware a period of MSR would follow his agreed sentence." In other words, as to whether defendant knew ahead of time that he would have to serve MSR if he pleaded guilty, *the record is silent*. But that very silence is a reason for reversal, not affirmance. "[T]he Supreme Court of the United States *** held [in *Boykin v. Alabama*, 395 U.S. 238 (1969),] that it is a violation of due process to accept a guilty plea in State criminal proceedings without an affirmative showing, placed on the record, that the defendant voluntarily and understandingly entered his plea of guilty." Ill. S. Ct. R. 402, Committee Comments (revised May 1997). If the admonitions are ambiguous or confusing, the record fails to make such an affirmative showing.

¶ 48       The admonitions here are, at best, ambiguous. The trial court described a *range* of imprisonment and a *range* of fines as "a maximum possible penalty." Consequently, it would have been unclear whether the MSR that the court mentioned in the same sentence was part of the "maximum possible penalty" or, alternatively, a punishment that went along with whatever imprisonment was imposed within the range.

¶ 49       For a guilty plea to be made with understanding, the defendant must be clear on the full amount of punishment the guilty plea could or will bring. "Defendants have a right to be admonished of the full consequences before pleading guilty ***." *Round v. Lamb*, 2017 IL 122271, ¶ 15. When the record fails to affirmatively show that the defendant understood the full

consequences before pleading guilty, the plain-error doctrine should step in, "[d]ue to the gravity of *the* error," considered in and of itself. (Emphasis added.) *Davis*, 145 Ill. 2d at 251. To condition plain-error review on the defendant's having pointed out to the trial court the error in its admonitions not only "would place the onus on defendant to ensure his own admonishment in accord with due process" (*Whitfield*, 217 Ill. 2d at 188) but would fundamentally change the plain-error doctrine and make it pointless. The whole idea of the doctrine is to allow the review of "[p]lain errors or defects affecting substantial rights" even though the errors "were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967); see *People v. Artis*, 232 Ill. 2d 156, 167 (2009). The majority denies plain-error review because defendant, after pleading guilty, did not send off for his court file, find the sentencing order, and (now thereby enlightened) bring to the trial court's attention its failure to admonish him that he would have to serve an additional year of custody—which MSR is—even if he pleaded guilty for the purpose of avoiding the maximum sentence the court had described. In short, the error was "not brought to the attention of the trial court"—precisely the omission that Rule 615(a) envisions. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967).