NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210712-U

NO. 4-21-0712

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 26, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| TOMMY L. JOHNSON, | ) | No. 17CF1648 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1  *Held:*  The trial court conducted a proper *Krankel* inquiry, and its denial of defendant's
request for independent counsel was not manifestly erroneous.

¶ 2  In November 2017, the State charged defendant, Tommy L. Johnson, with

domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2016)) and criminal damage to property (720

ILCS 5/21-1(a)(1) (West 2016)) for knowingly (1) causing bodily harm to his ex-girlfriend,

Jennifer M., and (2) causing more than $500 in damage to her vehicle.  In February 2018, a jury

acquitted defendant of criminal damage to property but was unable to reach a verdict on the

domestic violence charge which resulted in a mistrial.  In March 2018, at defendant's second

jury trial, the trial court again declared a mistrial on the domestic battery charge when the jury

was unable to reach a verdict.

¶ 3  After defendant's third jury trial in July 2018, defendant was convicted of

domestic battery. At defendant's sentencing hearing in August 2018, defendant made several complaints about the performance of his trial attorneys. The trial court did not conduct a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), into defendant's *pro se* claims of ineffective assistance of counsel. Defendant appealed, and this court in *People v. Johnson*, 2021 IL App (4th) 180758-U, ¶ 3, remanded this case to the trial court for a preliminary inquiry pursuant to *Krankel*.

¶ 4        On remand, the trial court held a preliminary inquiry on November 4, 2021, as directed. On November 12, 2021, the trial court entered a written order denying defendant's request for appointment of new counsel to address his claims of ineffective assistance of counsel. Defendant appeals, arguing the trial court erred by not advancing his case for an evidentiary hearing with new counsel pursuant to *Krankel* because he established his trial counsel's failure to impeach the State's key witness, Jennifer M., amounted to "possible neglect." In the alternative, defendant argues he is entitled to a new preliminary inquiry because the hearing held on November 4, 2021, did not comply with the procedural requirements of a preliminary *Krankel* inquiry. We affirm.

¶ 5                               I. BACKGROUND

¶ 6        This court in its January 2021 order summarized what occurred at defendant's July 2018 trial when he was convicted of domestic battery and his sentencing hearing. See *People v. Johnson*, 2021 IL App (4th) 180758-U, ¶¶ 6-37. As a result, we will only set forth those facts necessary to resolve the issues presented. As previously stated, this court remanded the matter for a preliminary inquiry pursuant to *Krankel* into defendant's *pro se* claims of ineffective assistance of counsel. The trial court conducted a *Krankel* inquiry on November 4, 2021. The court indicated it was aware of defendant's allegations of ineffective assistance made

at his sentencing hearing, which this court quoted in its order.  Defendant indicated he had a copy of this court's order.  The trial court then told defendant he did not need to repeat what he said at the sentencing hearing, but this was defendant's opportunity to state with specificity why he thought his lawyers were ineffective.

¶ 7        Several times during the hearing, defendant made arguments regarding why he was entitled to a *Krankel* hearing.  Each time, the trial court told defendant the court was currently holding his *Krankel* hearing.  The court told defendant to tell the court in defendant's "own words being as specific as you can, the details of why you think Ms. Riess was ineffective."

¶ 8        Defendant told the trial court one of his claims was that his trial attorneys were ineffective for failing to impeach Jennifer M.'s testimony with her prior inconsistent statements.  Defendant claimed Jennifer M.'s injuries were self-inflicted.  Noting this was a credibility contest between himself and Jennifer M., defendant argued (1) it was important for his attorneys to impeach Jennifer M. with her prior inconsistent statements and (2) their failure to do so prejudiced him.  According to defendant, Jennifer M. provided inconsistent testimony regarding (1) when defendant struck her, (2) when her injuries occurred, (3) her reasons for going with defendant in her car, (4) her reasons for going to Andrea Strong's house instead of the police station after she drove away from defendant, (5) her reasons for sending a care package to defendant while he was in jail, and (6) where she parked her car when she arrived at Strong's home.

¶ 9        Defendant provided the trial court with many other reasons why he believed his trial attorneys were ineffective including the following: (1) they failed to submit into evidence defendant's arm cast as exculpatory evidence; (2) they failed to test the cast for blood residue;

- 3 -

(3) they failed to submit a photo of defendant's cast showing Jennifer M. and her children signed his cast; (4) they failed to question Jennifer M. why her and her children's names were on the cast; (5) they failed to acquire jail records and police reports for alleged domestic violence incidents between Jennifer M. and her ex-husband; (6) they failed to call Jennifer M.'s counselor at Champaign Treatment Center to testify about Jennifer M.'s drug use; (7) they failed to obtain surveillance footage from a Super Pantry/Circle K for proof Jennifer M. did not have blood on her shirt after the alleged domestic violence incident at 104 Ludlow in Rantoul and to show Jennifer M. had on a different shirt; (8) they failed to obtain surveillance footage from a Casey's General Store for proof Jennifer M. was the aggressor; (9) they failed to obtain surveillance footage from a Hardee's restaurant; (10) they failed to obtain surveillance footage from a Subway restaurant which allegedly would have shown Jennifer M. hitting defendant and causing her own injuries by hitting herself and banging her head on the vehicle's dashboard; (11) they failed to obtain and/or subpoena Jennifer M.'s phone records to show proof her phone was off; (12) they failed to obtain defendant's phone records from Boost Mobile to prove defendant's phone was on and to question Jennifer M. about having defendant's phone; (13) they failed to obtain a recorded phone call between Jennifer M. and defendant while he was in the Champaign County jail where Jennifer M. allegedly was attempting to blackmail defendant; (14) they failed to obtain surveillance footage from the Carle Hospital emergency room showing defendant and Jennifer M. together between 11 p.m. and 1 a.m. on November 14, 2017; (15) they failed to submit into evidence his medical records or the testimony of his orthopedic doctor to establish he did not have any new injuries to his hand on January 1, 2018, nor was he in any condition to swing, hit, punch, or throw while his hand was in a cast; (16) they failed to obtain surveillance footage from Carle Hospital showing defendant and Jennifer M. together when the red cast was

placed on defendant's arm; (17) they failed to ask questions defendant sent to them to prove his innocence; (18) they failed to question Jennifer M. about a diamond ring; (19) they failed to properly choose a jury; (20) they failed to file perjury charges against Jennifer M.; (21) attorney Amanda Riess failed to adequately represent defendant by allowing a less-experienced lawyer to examine defendant and cross-examine Jennifer M.; (22) they failed to cross-examine Officer Jerry King about whether he took pictures of the van in which Jennifer M. was sitting when defendant allegedly hit her, whether he found any blood in the front passenger area of the van, and whether he asked Jennifer M. if he could take her shirt as evidence; (23) they failed to impeach Jennifer M. with prior testimony she said defendant hit her earlier in the day; (24) they failed to properly cross-examine Andrea Strong; (25) they failed to properly question defendant, which prevented defendant from providing the jury with the entire story of what happened that night; (26) Attorney Riess failed to adequately represent him by allowing attorney Morgan Farrington to assist with defendant's case against his wishes; (27) each of his attorneys failed to represent defendant to the best of her ability because defendant refused to accept a plea offer from the State; and (28) his attorneys advised him he would be found guilty if he refused to enter a plea deal with the State.

¶ 10 The trial court questioned attorney Riess about defendant's claims. With regard to the surveillance footage, she indicated they tried to get footage from the Casey's General Store, but none was available. Riess said she did not recall defendant asking her to subpoena surveillance footage from any orthopedics department or emergency room. Riess did review defendant's medical records and determined they would not be helpful to defendant. With regard to the phone records, Riess did not recall defendant asking her to get the records for his phone and Jennifer M.'s phone.

¶ 11          As to attorney Farrington's cross-examination of Jennifer M., Riess indicated she and Farrington's trial decisions, including how to present evidence, were strategic decisions based on the information available to them. Riess did not recall any information they could have impeached Jennifer M. with that would have changed the outcome of the case. She indicated both she and Farrington reviewed the transcripts of Jennifer M.'s testimony from defendant's prior trials to prepare for defendant's third trial. Riess indicated the decision not to introduce potentially harmful evidence to defendant was a strategic decision.

¶ 12          The trial court mentioned defendant's concerns regarding attorney Farrington's representation and asked attorney Riess to explain the circumstances of Farrington's involvement. Attorney Riess responded she and Farrington called defendant with the intent to introduce defendant to Farrington. During the call, it sounded to Riess like defendant put the phone down and walked away so she was not able to fully introduce defendant to Farrington. According to Riess, defendant never said he did not want Farrington on his case. Riess was under the impression defendant wanted Farrington working on the case. Riess denied saying defendant's case would be a chance for Farrington to get experience. Based on Riess's recollection, Farrington had been at the public defender's office for a while, and this was not her first trial.

¶ 13          The trial court then asked Riess about defendant's complaint that Farrington did not allow him to fully testify because of the questions she asked him. Riess testified Farrington did an appropriate job of questioning defendant and elicited appropriate testimony from him.

¶ 14          As to her own representation of defendant, Riess told the trial court defendant had submitted to the court incomplete correspondence between her and defendant. She also indicated she had significant experience in criminal cases, had worked in the public defender's office for

- 6 -

13 years, and all decisions made during the trial were appropriate based on her knowledge and experience. As to defendant's complaint Riess was unprofessional, Riess denied the assertion, indicating she was calm, courteous, and professional with defendant.

¶ 15    Riess told the trial court she spoke with defendant repeatedly about the State's strong case against him and recommended he enter plea negotiations with the State. She stated she informed defendant of every plea offer made by the State, all of which defendant rejected. Riess also indicated she provided defendant with all the information he needed to make the best decision for himself as to whether he wanted to go to trial or enter a guilty plea. Further, Riess indicated she told defendant she would zealously defend him at trial regardless of the overwhelming evidence against him if he decided not to enter a plea.

¶ 16    The trial court then asked defendant if he had any final comments. Defendant asked the court to question attorney Riess about why she did not introduce defendant's hand cast as exculpatory evidence. The court then raised the issue with Riess. Riess indicated the cast was bright red and appeared to be dirty around the hand area. Riess was concerned the jury might think there was blood on the cast. She also told the court she was afraid the State could have used the cast against defendant.

¶ 17    Again, the trial court asked defendant if he had any other comments he wanted to make. Defendant stated: "No, Your Honor. I did [an] immaculate job already. I did a good enough job already presenting my case."

¶ 18    On November 12, 2021, the trial court issued a written order, finding defendant's claims were meritless or concerned matters of trial strategy.

¶ 19    This appeal followed.

¶ 20                    II. ANALYSIS

¶ 21 On appeal, defendant argues his case should have been advanced to an evidentiary hearing with new counsel pursuant to *Krankel*. In the alternative, defendant argues he is entitled to a new preliminary inquiry because the trial court did not comport with the procedural requirements of a preliminary *Krankel* hearing.

¶ 22 A. Adequacy of Hearing

¶ 23 We first look at whether the trial court conducted an adequate preliminary inquiry pursuant to *Krankel* on remand. While acknowledging the court allowed him to state all his claims, defendant argues the court failed to ascertain sufficient information to determine if defendant's attorneys were ineffective with regard to defendant's direct examination. Defendant claims he was not allowed to testify fully because attorney Farrington's examination was inadequate.

¶ 24 Whether the trial court conducted an adequate preliminary inquiry is a question of law we review *de novo*. *People v. Jolly*, 2014 IL 117142, ¶ 28, 25 N.E.3d 1127. The narrow purpose behind a *Krankel* preliminary inquiry is to determine whether to appoint an independent attorney to represent the defendant in further proceedings. *People v. Jackson*, 2020 IL 124112, ¶ 95, 162 N.E.3d 223.

¶ 25 When confronted with a defendant's posttrial allegations of ineffective assistance of counsel, our supreme court set out the procedural steps for a trial court to follow in *People v. Moore*, 207 Ill. 2d 68, 77-78, 797 N.E.2d 631, 637 (2003).

> "New counsel is not automatically required in every case in which a defendant
> presents a *pro se* posttrial motion alleging ineffective assistance of counsel.
> Rather, when a defendant presents a *pro se* posttrial claim of ineffective
> assistance of counsel, the trial court should first examine the factual basis of the

defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed."

The trial court may question trial counsel about the facts and circumstances of the defendant's allegations, briefly discuss the allegations with defendant, and base its evaluation of defendant's allegations on its knowledge of defense counsel's performance at trial. *Moore*, 207 Ill. 2d at 78-79. In this case, Judge Rosenbaum did not have first-hand knowledge of defense counsel's trial performance because Judge Difanis presided over defendant's trial.

¶ 26 On appeal, our "review of a defendant's claim of error necessarily turns on the *adequacy* of the trial court's inquiry." (Emphasis in original.) *People v. McLaurin*, 2012 IL App (1st) 102943, ¶ 40, 982 N.E.2d 832. "If a trial court conducts an inadequate *Krankel* inquiry, then the inquiry does not meet the purpose of the rule." *McLaurin*, 2012 IL App (1st) 102943, ¶ 44.

¶ 27 According to defendant's brief, at the *Krankel* preliminary inquiry, attorney Riess did not directly respond to his complaint his testimony was limited. Relying on *People v. Peacock*, 359 Ill. App. 3d 326, 339-40, 823 N.E.2d 396, 407 (2005), defendant argues it was the trial court's duty to inquire into defendant's claim before ruling on defendant's motion. However, in *Peacock*, 359 Ill. App. 3d at 339, 823 N.E.2d at 407, the trial court made no inquiry of any kind into the defendant's allegations of ineffective assistance of counsel.

¶ 28 In this case, the trial court held an extensive hearing, giving defendant all the time he needed to address his claims of ineffective assistance of counsel. During the hearing, the court specifically told defendant this was his chance to provide the court with all the factual

details supporting his claims of ineffective assistance. The court also told defendant to be specific. Further, the court questioned attorney Riess about defendant's claims, specifically asking her about his claim attorney Farrington did not ask defendant enough questions for him to testify fully. Attorney Riess stated attorney Farrington did an appropriate job of questioning defendant and was able to elicit all of the appropriate testimony from defendant.

¶ 29 After questioning defense counsel, the trial court asked defendant if he had anything else to say. Throughout the *Krankel* preliminary inquiry, defendant was not reticent to state his complaints about counsel's performance. However, he did not provide any further information as to how his testimony at trial was incomplete. Instead, defendant asked the court to ask attorney Riess why she did not introduce his cast as exculpatory evidence, which the court then did. When the court was done asking Riess about the cast, the court asked defendant again if he had any further comments. Defendant said he did not, stating he had done an excellent job presenting his case.

¶ 30 Based on this record, we conclude the trial court conducted an adequate *Krankel* preliminary inquiry. The court allowed defendant all the time he needed to state his claims and provide the court with specific facts about his claims, questioned defense counsel about defendant's claims, and twice provided defendant with the opportunity to address defense counsel's explanations.

¶ 31                                    B. Possible Neglect

¶ 32 We next address defendant's argument the trial court erred when it failed to appoint him an independent attorney and advance his case to an evidentiary hearing because defendant established his trial attorneys' possible neglect in this case. Defendant's argument on appeal centers on his claim his attorneys failed to adequately impeach the alleged victim and the

- 10 -

State's key witness, Jennifer M., with inconsistent testimony she provided at defendant's first two trials. Because we have already found the trial court conducted a proper *Krankel* inquiry, we will not disturb the court's ruling unless its decision was manifestly erroneous. *Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Jackson*, 2020 IL 124112, ¶ 98.

¶ 33       To establish ineffective assistance of counsel, a defendant must show his attorney's performance fell below an objective standard of reasonableness. In addition, a defendant must show a reasonable probability exists the outcome of the proceedings would have been different absent his attorney's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. As previously stated:

> "[W]hen a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *Moore*, 207 Ill. 2d at 77-78, 797 N.E.2d at 637.

A claim lacks merit when it is misleading, conclusory, legally immaterial, or does not bring to the trial court's attention a colorable claim his attorney provided ineffective assistance. *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 22, 960 N.E.2d 27.

¶ 34       Generally, the manner in which an attorney cross-examines a witness is considered trial strategy. However, citing *People v. Rosemond*, 339 Ill. App. 3d 51, 65, 790

N.E.2d 416, 428 (2003), defendant notes that if the cross-examination was objectively unreasonable and it prejudiced the defendant, it is possible the attorney can be deemed ineffective. However, defendant fails to establish attorney Farrington's cross-examination of Jennifer M. was objectively unreasonable.

¶ 35     According to defendant's brief:

"[Jennifer M.] testified inconsistently about numerous aspects of the events of November 22, 2017[,] from one trial to the next. For instance, during the second trial[, Jennifer M.] testified that she drove to Strong's house rather than the police station not because she was out of gas, but because she did not have a driver's license. [Citation.] She also testified at the second trial that she originally got into the car with [defendant] because it was her car. [Citation.] In the third trial, she said he ordered her in the car and if she did not get in, she knew she would have been dragged there. [Citation.] More importantly, at the first two trials, [Jennifer M.] testified, inconsistently with her testimony at the most recent trial, that [defendant] actually hit her earlier during the course of the events while they were still driving around together in her car. [Citation.] Nevertheless, trial counsel failed to impeach [Jennifer M.] with her previous inconsistent testimony at the third trial."

Defendant also mentioned Jennifer M.'s testimony was inconsistent regarding where she parked when she went to Andrea Strong's house.

¶ 36     The trial court questioned attorney Riess about Jennifer M.'s cross-examination. In its written order, the court indicated:

"As to not questioning the victim *** more diligently and impeaching

[her] with prior inconsistent statements, Riess indicated she did not recall specific instances of such since the trial was long ago but that all questions she asked, or did not ask, were based on tactical strategic decisions. In fact, in her letter to Defendant, in Defense [exhibit] 3, she says that she looked over questions that Defendant himself wanted her to ask and she replie[d] to him that she would consider those but that what questions to ask are up to her. She did not believe that any of the impeachment that Defendant describes would have changed the outcome of the trial."

This is a reasonable presumption by attorney Riess considering the State had police body camera footage of defendant's aunt, Andrea Strong, on the night in question corroborating Jennifer M.'s allegation defendant reached into the van and hit her with his cast. The trial court also indicated it had reviewed the record in this case and found attorney Farrington extensively cross-examined Jennifer M. and questioned her about some things defendant claimed were not addressed. As a result, the court found defendant's claim lacked merit and/or concerned a matter of trial strategy.

¶ 37 The trial court's ruling is not manifestly erroneous. The alleged inconsistencies defendant points to in Jennifer M.'s testimony are minor or could have been damaging to defendant. Defense counsels' decision not to impeach Jennifer M. over her allegedly inconsistent testimony as to why she got into her car with defendant, went to Andrea Strong's house instead of the police station, or the location where she parked her car when she went to Strong's home does not amount to possible neglect of defendant's case.

¶ 38 Further, defense counsels' decision not to remind Jennifer M. that she had previously testified defendant also hit her while they were in her car clearly was a good decision. Defendant's attorneys had no reason to remind Jennifer M. of this other allegation of domestic

- 13 -

battery.

¶ 39                          III. CONCLUSION

¶ 40        For the reasons stated, we affirm the trial court's judgment.

¶ 41        Affirmed.